**TEXARKANA MACK SALES, INC., Appellant,**

v.

**James C. FLEMISTER, Appellee.**

**No. 9532.**

Court of Appeals of Texas, Texarkana.

Nov. 17, 1987.

David J. Potter, Texarkana, for appellant.

William G. Bullock, Hubbard, Patton, Peek, Haltom & Roberts, Texarkana, for appellee.

GRANT, Justice.

James Flemister brought a deceptive trade practice action based on misrepresentations by a salesman about a used truck that he had purchased from Texarkana Mack Sales.

Texarkana Mack Sales (hereafter Mack Sales) contends that there was no evidence of misrepresentation or, alternatively, that the evidence was factually insufficient to support the verdict, and that the court erred in overruling its objection to hearsay testimony.

Flemister purchased a used truck from Mack Sales on August 19, 1983. Mr. Flemister testified that the sales manager of Mack Sales, Edward Utz, told him that the truck had just been completely overhauled, that the people in Corpus Christi (from whom Utz had purchased the truck) had checked the truck out, that it was in good shape, and that it should be able to run 250,000 to 300,000 miles. No written warranty was provided with the truck and this case is constructed around the oral statements made by Mr. Utz.

Flemister drove the truck for three months (25,000 miles) without major problems. Upon finding a head gasket water leak, he took the truck to a shop in Arkansas. The mechanic (Mr. Gilbert) removed the heads to replace the gaskets and discovered bent pushrods and sufficient visible engine wear to convince him that the engine had not been overhauled for at least 200,000 miles. He installed the gaskets and informed Flemister of his findings. Flemister then took a load to Dallas. He discovered en route that fuel was leaking into the oil system. He encountered difficulty in getting the truck repaired in Dallas, and traveled some 200 miles to Wichita Falls, where Jolly Mack Sales eventually overhauled the engine at a cost of $3,820.44. Flemister sued for the repair cost and recovery of loss for down time, travel, meals and lodging in the total amount of $1,677. The jury found in favor of Flemister on each special issue.

At the hearing on Mack Sales' motion for new trial and motion for judgment notwithstanding the verdict, counsel for Mack Sales did not appear. At that hearing, the trial judge denied both motions.[1]

---

[1] Mack Sales uses the following statement by the trial judge to support its argument that the evidence is insufficient to support the verdict:

But, I want the record to reflect that the Court, had the Defendant been here by Counsel to properly urge ... the Court ... was, at the time the Court took the Bench, constrained to believe that the Motion JNOV and the Motion for New Trial, either, or both, were well taken after hearing the evidence and was constrained to grant either one, ... but the Defendant not being here to urge his Motions and present his Motions to the Court and argue his Motions and give the Attorney for the Plaintiff the opportunity to urge its Motion to the Court and argue its side of the case, that this is basically unfair to the Plaintiff to do this, and the Plaintiff being here and present, Judgment will be granted on the—on the jury's verdict,....

Judgment was granted Flemister for actual damages for the engine repair and incidental expenses in the total amount of $5,497.44. No special issue was given as to whether misrepresentations were made knowingly. Accordingly, the first thousand dollars of actual damages was doubled (as provided by Tex.Bus. & Com.Code Ann. § 17.50(b) (Vernon Supp.1987)), for a recovery of $7,497.44. The judgment also provided for attorney's fees, which were stipulated to be $10,000 through trial, with an additional $1,500 provided for appeal to this Court.

Mack Sales first argues that because there was no evidence to support the verdict, the trial court erred in refusing to grant two motions for a directed verdict, in refusing to grant a motion for judgment notwithstanding the verdict, in refusing to grant the motion for new trial, and in overruling objections to the court's instructions and special issues 1 through 8. Alternatively, Mack Sales contends that the factual evidence of misrepresentation was insufficient to support the verdict.

■ We address first Mack Sales' contention that there was no evidence, or alternatively insufficient evidence, concerning the alleged misrepresentation. In reviewing a no-evidence point, the reviewing court considers only the evidence tending to support the finding, viewing it in the light most favorable to the finding, giving effect to all reasonable inferences therefrom, and disregarding all contrary or conflicting evidence. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981). If there is any probative evidence tending to support the finding of the jury, the no-evidence point must fail. *Elliott v. Great National Life Insurance Co.*, 611 S.W.2d 620 (Tex. 1981). In reviewing a factually insufficient point, the court will consider all the evidence in the record that is relevant to the finding that is challenged, both that tending to prove and disprove the fact, and may set the verdict aside only to prevent a manifestly unjust verdict. *In re King's*

*Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Flemister and his wife admitted that Utz had told them he had obtained the information that the motor had been overhauled from a dealer in Corpus Christi. But they also testified that they were relying upon Utz's word, and that Utz had represented to them that the truck was in good shape and would run from 250,000 to 300,000 miles without any problem. Their testimony indicated that Utz represented to them that he was selling them a truck with a recently overhauled motor and that his representations encompassed more than merely repeating that he had been told by the dealer in Corpus Christi that the motor had been overhauled. The Flemisters' testimony further indicated that Utz adopted the statement regarding the engine having been overhauled as true and represented to them that the truck was in good shape and that it would go from 250,000 to 300,000 miles without any trouble.

Utz took the position that the only statement he made to Flemister about the overhaul was, "Mr. Flemister, I have been told that it has been recently overhauled." The undisputed testimony indicated that Leroy Ray, from whom Mack Sales had bought the truck, had told Utz that the vehicle had been recently overhauled. Therefore, if Utz only represented to Flemister that he (Utz) had been told that the motor had been overhauled, there was no misrepresentation, because the statement was true. *Nagy v. First National Gun Banque Corp.*, 684 S.W.2d 114 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). On the other hand, if Utz presented the information as true leading the buyers to the conclusion that the information was from a reliable source, this could be construed as a misrepresentation. A showing that Utz believed that the representation was true would not preclude liability. Liability is predicated not upon the belief of the seller that the statements are true, but upon the falsity of the representation actually made. *Pennington v.*

Nevertheless, we are required to look to the actual ruling of the trial court on the motion for new trial and motion for judgment notwithstanding the verdict, and further we must look to the actual evidence to determine its sufficiency.

*Singleton,* 606 S.W.2d 682 (Tex.1980); *Nagy v. First National Gun Banque Corp., supra.*

■ The jury resolved this matter in favor of the Flemisters by finding that Mack Sales, through its agent, Utz, represented to Flemister that the vehicle's engine had recently been completely overhauled and that the engine was in all respects "road-ready and fit for the intended purpose of long-haul trucking." We find there is some evidence to support the jury finding that Utz represented to Flemister that the engine on the vehicle had been recently overhauled, and we find the evidence sufficient to support the jury's findings. We have also examined the testimony to see if there is legally sufficient evidence to support the jury finding that the representation was false. The mechanic who replaced gaskets on the truck engine testified that the engine at that time had not been recently overhauled and had at least 200,000 miles of wear. An onlooker in the mechanic's shop testified that, in his opinion, the engine had not been overhauled for at least 100,000 miles.

Flemister's expert witness also testified without objection that the parts in the box which he had been told came from Flemister's engine were heavily worn. Although based on hearsay, his testimony also has probative value on this point. Tex.R.Evid. 802.

■ We have reviewed the evidence concerning the answer to the special issue on whether Flemister relied upon the representations. Both Flemister and his wife testified that if Utz had not made the statements that are the basis of this suit, they would not have purchased the truck. This, along with the circumstances of the sale, we find to be legally sufficient evidence to support the jury's findings.

■ We next look at the special issue asking the jurors to determine whether the representations were a producing cause of damages. The evidence shows that the condition of the engine is a primary factor in the anticipated life span of a truck and that the life expectancy of a recently over-hauled engine is from 250,000 to 300,000 miles. If the engine had not been overhauled, it would not be capable of the represented mileage. Thus, the purchasers would be damaged by the amount necessary to place them in the position that they would have been in had the representations been true. The representations were therefore a producing cause of damage to the Flemisters. We find the evidence is legally sufficient to support this finding.

■ Next, we turn to the answers to the special issue on the amount of the damages. Both testimony and invoices were admitted into evidence at the trial to prove the cost of the overhaul of the engine and related expenses. We again find the evidence legally sufficient to support this finding.

We next look to the challenge of the jury's finding that the representations by Utz constituted a deceptive trade practice. The court correctly instructed the jury that the term "false, misleading, or deceptive act or practice" means any act or omission, or series of acts or omissions which have the capability of deceiving an average or ordinary person, even though that person may have been ignorant, unthinking or credulous. Tex.Bus. & Com.Code Ann. § 17.46 (Vernon Supp.1987). We find the evidence is legally sufficient to support the jury's finding on this issue. *Spradling v. Williams,* 566 S.W.2d 561 (Tex.1978); *Nagy v. First National Gun Banque Corp., supra.*

We turn now to the final point of error in which Mack Sales contends that the trial court erred in admitting testimony of Flemister's expert witness, because the expert relied upon hearsay for identification of the engine parts that he examined. The engine parts were produced in a basket early in the trial and were later utilized by Flemister's expert witness when he gave his opinion about the condition of the engine from which those parts came. The engine parts were never introduced into evidence.

Mack Sales' counsel objected initially to admission of Flemister's reference to the parts, because there was no proof that the parts actually came out of Flemister's

truck. Flemister testified over an objection to hearsay that his understanding was that the parts came out of his truck engine. The court overruled the hearsay objection by Mack Sales in this manner:

Q ... Did you understand that these were parts ...

MR. POTTER: Objection as to any understanding, Your Honor, unless there is some definition of the basis of his understanding.

THE COURT: I haven't heard the question, Mr. Potter.

MR. POTTER: All right.

Q [Mr. Bullock] Was it your understanding when you received these parts from Jolly Mack, Inc., that these were parts that came from your engine?

A Yes, sir.

MR. POTTER: Objection. That would have to be hearsay, Your Honor, because he would have to—unless he saw them come out of his engine or unless he has some way for knowing. Understanding is a request for hearsay answer.

THE COURT: Overruled.

MR. POTTER: Your Honor, may I ...

THE COURT: The question was whether or not it was his understanding, Mr. Potter.

MR. POTTER: Yes, sir, and I ...

THE COURT: That's not hearsay.

MR. POTTER: All right, may I inquire of the witness how he got that understanding?

THE COURT: No, sir. The question does not call for hearsay, Mr. Potter. The question is was it his understanding, and that does not call for hearsay and there are no arguments allowed upon objection except by express consent of the Court, which the Court does not give. The objection is overruled. Proceed, Mr. Bullock.

▇▇▇ Testimony by a witness that it was his "understanding" that a particular thing is true is clearly hearsay when the understanding is based on the out-of-court statements of a third party. *Gerland's Food Fair, Inc. v. Hare*, 611 S.W.2d 113 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Any understanding which a witness has must be based on knowledge acquired in some manner. The mere form of the expression is not the controlling factor as to the statement's admissibility. Testimony that appears to be a direct recounting of knowledge obtained by personal observation may in reality be a mere recounting of statements made by some other, unknown party. 2 R. Ray, *Texas Law of Evidence Civil and Criminal* § 1398 (Texas Practice 3d ed. 1980). By his blanket refusal to allow counsel to question the witness on voir dire about the source of his understanding, the trial judge eliminated the only method available at the time of the objection to determine whether the testimony was in fact based on personal knowledge or on the statements of a third party. Cross-examination revealed that Flemister's testimony was based on the unsworn statements of a mechanic at the repair shop, who had told him that the parts came out of his engine. Evidence is hearsay when its probative force depends in whole or in part on the competency or credibility of some person other than the person by whom it is sought to be produced. *Pan American Fire & Casualty Co. v. Loyd*, 411 S.W.2d 557 (Tex.Civ.App.—Amarillo 1967, no writ); *Travelers Insurance Co. v. McCown*, 206 S.W.2d 663 (Tex.Civ.App.—Eastland 1947, writ dism'd); *Strack v. Strong*, 114 S.W.2d 313 (Tex.Civ.App.—San Antonio 1938, writ dism'd).

Flemister's expert had never seen the engine in place, and he based his testimony exclusively on the condition of the parts in the box. Mack Sales' counsel objected early in his testimony, but the record is unclear as to what he objected.[2] His objec-

---

**2.** The record states:

Q Have you ever worked on the particular 1978 Mack truck Cummins engine that Mr. Flemister owns?

A No.

Q At my request have you, however, had an opportunity to examine the parts that were given to Mr. Flemister by Texarkana Mack Sales, Inc., in November of '82?

A Yes.

tion was sustained, but the expert was further questioned by Flemister's counsel and then went on to give his opinion about the condition of the engine from which the parts came. Mack Sales did not object to the use of the box of parts as the basis for the expert's testimony, and the expert made clear that he claimed no personal knowledge about the source of the parts. He testified without objection that Flemister's attorney had told him that the parts were the ones taken from Flemister's truck and given to Flemister by the mechanic who had overhauled the truck. Mack Sales' counsel then cross-examined the expert at some length about the condition of the parts.

The court's admission of evidence over objection is generally considered harmless if the objecting party later permits similar evidence to be introduced without objection. *Richardson v. Green,* 677 S.W.2d 497 (Tex.1984). We therefore hold the error to be harmless.

We affirm the judgment of the trial court.

MR. POTTER: I have no way of knowing that, Your Honor, and I object to it.
THE COURT: Sustained.
Q Mr. Pierce, have you examined parts that I showed to you and represented to you to be the parts that were given to Mr. Flemister by Texarkana—by Jolly Mack Sales?
A Yes.