

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00047-CV

_____


CALVIN MONASCO, Appellant

V.

GILMER BOATING AND FISHING CLUB, Appellee


On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 748-07


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

## I.    BACKGROUND AND PROCEDURAL POSTURE

The Gilmer Boating and Fishing Club (the Club) is a private, unincorporated association[1] located in Upshur County, formed for the purpose of "conducting and maintaining the same as a pleasure resort for the benefit of its members and their families and friends while promoting good environmental practices."   The Club has thirty shares of stock, apparently a majority of which were issued to charter members of the organization.   Bylaws for the government of the Club, adopted by the shareholders, provide that a prospective Club member must be approved for membership by the board of directors before he or she is permitted to purchase a share of the Club's stock.   Club membership is granted on a vote of seven board members.

At a meeting of the Club's board of directors in June 2005, Club member David Monk proposed that he be permitted to sell his share of stock in the Club to Monasco.   The proposal was approved, and Monasco was approved for Club membership at this meeting.   Together with the share purchased from Monk, Monasco also purchased Monk's lake house located on Club property.   Prior to the vote approving Monasco's Club membership, Monasco was asked if he read and understood the Club's bylaws, which are binding on shareholders.   Monasco indicated that he read and understood the Club bylaws.   Article IV, Section 5 of the bylaws provides:

---

[1]The record indicates the Club's status as an unincorporated association was disputed in the trial court.   No ruling was ever requested on this issue, and the trial court did not make a ruling on it.   Neither was a request made for a further finding of fact on the issue.   At oral argument, Calvin Monasco's attorney stated he did not question the status of the organization.   This issue was not raised on appeal, and we, therefore, do not address it.   TEX. R. APP. P. 38.1.

2

Only members themselves may reside on Club property. It is expressly forbidden that buildings or property be rented or used by non members. Non members shall include adults within a Club member's own family except his/her spouse.

In spite of this provision, Monasco's brother, Larry Monasco, has been living with Monasco at his lake house, together with Monasco's adult son, Ace Monasco. Larry took up residence with Monasco after the sale and continued to live with Monasco almost two years hence. Unhappy with this state of affairs, the Club filed a declaratory judgment action, asking the court to declare the bylaws to be an enforceable contract between the Club and Monasco, which prohibit Monasco from permitting Larry, or any other adult person not the spouse of Monasco, from residing on the property. In addition, the Club asked the court to enjoin Monasco from permitting Larry, or any other adult person not the spouse of Monasco, from residing on the property. After a bench trial, the trial court entered judgment granting the requested relief and filed findings of fact and conclusions of law.

## II. ANALYSIS

Monasco disputes the legal and factual sufficiency of the evidence to support the trial court's finding that he is bound by Article IV, Section 5 of the Club's bylaws, which prohibits any adult person not his spouse from residing on Club property. This finding is based on the premise that the Club's bylaws are an enforceable contract between Monasco and the Club. Monasco claims that he is not bound by the bylaws because there is no signed, written document indicating his assent to be so bound. Therefore, Monasco claims the trial court erred in failing to apply the

3

statute of frauds. The trial court found that Monasco merely purchased personal property and, therefore, concluded that the statute of frauds was not applicable to this transaction. Finally, Monasco claims that even if he purchased only personal property, the statute of frauds nevertheless applies because performance of the contract could not be accomplished within one year. We affirm the judgment of the trial court.

## A. Reviewing Evidentiary Sufficiency

An appellate court conducts a legal and factual sufficiency review of a trial court's findings by the same standards applied when reviewing evidence supporting a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Long v. Long*, 196 S.W.3d 460, 464 (Tex. App.—Dallas 2006, no pet.). Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

In reviewing a legal sufficiency complaint of an adverse finding on which the appellant did not have the burden of proof, the appellant must demonstrate on appeal that no evidence supports the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Cendant Mobility Servs. Corp. v. Falconer*, 135 S.W.3d 349, 352 (Tex. App.—Texarkana 2004, no pet.). We will sustain such a challenge only when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than

4

a mere scintilla of evidence; or (4) the evidence established conclusively the opposite of a vital fact. *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)). If the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence, more than a scintilla of evidence exists. *Burroughs Wellcome v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995).

When challenging the factual sufficiency of the evidence supporting an adverse finding on which the appealing party did not have the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804 (Tex. App.—Dallas 2003, pet. denied). The evidence is sufficient to support the adverse finding if the evidence is such that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence. *Falconer*, 135 S.W.3d at 352. A challenge to the factual sufficiency of the evidence will be sustained if the evidence is so weak or the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## B. The Contract

Monasco maintains that the Club lacked the authority to enforce the provisions of its bylaws against him. While the parties did not brief the issue of whether a contract existed between the Club and Monasco, a complete understanding of the basis of the trial court's

5

judgment[2] necessitates a discussion of this issue. In fact, the Club specifically asked the trial court to declare that the Club bylaws are an enforceable contract between the Club and its members. In finding that Monasco is bound by the Club bylaws, the trial court implicitly found the bylaws to be a part of a binding contract or agreement between the Club and Monasco.

The testimony regarding the agreement between the Club and Monasco revealed that Club member David Monk proposed that he be permitted to sell his share of stock in the Club to Monasco. Article IV, Section 1 of the bylaws provides:

> All persons wishing to buy or become the owner of a share of stock herein shall be voted on for membership privileges by the board of directors and officers and must pass a ballot of at least seven votes before being admitted to membership. Shares of stock may not be fractionalized and each share must show the name of only one person. No person shall own more than one (1) share of stock.

At a meeting in June 2005, Club members voted on whether Monasco would be admitted as a Club member via the purchase of Monk's share of stock. Prior to the vote, there was a discussion regarding Article IV, Section 5 of the bylaws, which provides:

> Only members themselves may reside on Club property. It is expressly forbidden that buildings or property be rented or used by non members. Non members shall include adults within a Club member's own family except his/her spouse.

Monasco testified that he told Club president Robert Brown, at the June 2005 meeting, that he wanted his disabled brother to reside with him at the lake house (located on Club property) that

---

[2]The judgment of the trial court provided that Article IV, Section 5 of the Club bylaws is enforceable against Monasco and that he is bound by said provision. Accordingly, the judgment provides that Monasco "is prohibited from permitting any adult person not the spouse of Defendant from residing on the property located at 1044 PR 1130, Gilmer, Texas."

6

he intended to purchase from Monk. Monasco also told Brown that he had three adult children and that they would always be welcome to live with him if they were in need of a place to live. The response he received from Brown was not an affirmance, but a question—was Monasco familiar with the bylaws? Monasco indicated that he had read and understood the bylaws. Indeed, the minutes of the June 2005 meeting state: "Calvin wanted to know if there would be any objection with his brother living with him until he finished renovating the house. The Club had no objections as long as it was only temporary and not permanent."

Jerry Johnson, also a board member present at the June 2005 meeting, testified that Monasco never told the board members at the meeting that he intended for Larry to live with him permanently. Monasco would not have been approved for Club membership if he indicated he did not intend to be bound by the bylaw restricting residency on Club premises. It is undisputed that Monasco was never asked to sign a written agreement wherein he agreed to abide by the bylaws, and in particular, that section which prohibits an adult nonspouse family member from living with a member on Club property. Monasco testified that if he had been asked to sign such an agreement, he would not have become a member of the Club.

Monk, also present at the June 2005 meeting, testified that Monasco never indicated that his purchase of the property was contingent on Larry's ability to live with him. Such a statement would have been significant and would have been recorded in the minutes of the meeting by

7

Monk, who was the Club secretary at the time. Ultimately, the Club approved the sale of the share and the lake house from Monk to Monasco.[3]

Texas courts have recognized that association bylaws may constitute a contract between the parties. *Lundine v. McKinney*, 183 S.W.2d 265, 273 (Tex. Civ. App.—Eastland 1944, no writ) (articles of association and bylaws agreed on by the parties constitute a contract which the courts will enforce both as between the members themselves and as between the association on the one side and the individual members on the other, citing 7 C.J.S., *Associations*, § 11, p. 36); *Brown v. Harris County Med. Soc.*, 194 S.W. 1179, 1180 (Tex. Civ. App.—Galveston 1917, no writ) (association rules which regulate conduct and measure rights constitute articles of agreement to which all who have become members are parties and are governed in their relations to such associations); *Gaines v. Farmer*, 55 Tex. Civ. App. 601, 119 S.W. 874, 877 (1909) (association bylaws are contract of members with each other, and by them their rights as members are to be determined); *see also Cline v. Ins. Exch. of Houston*, 140 Tex. 175, 166 S.W.2d 677 (1942) (voluntary association has power to enact rules governing admission of members and prescribing certain qualifications for membership; such rules will be enforced, unless they are against good morals or violate state law).

The trial court's finding that Monasco was bound by Article IV, Section 5 of the bylaws[4]

---

[3]The seven votes required for approval was met.

implicitly recognizes (as sought in the petition for declaratory judgment) a binding contract between Monasco and the Club.[5] The evidence is both legally and factually sufficient to support the trial court's finding that Monasco was contractually bound by the Club bylaws. Monasco claims, however, that because there was no signed agreement to be bound by the bylaws, the statute of frauds applies here and the trial court erred in determining otherwise.

The key to this determination depends on the nature of the property purchased. Monasco contends he purchased real property, thus necessitating application of the statute of frauds.[6] The Club contends Monasco merely purchased personal property and thus the statute of frauds does not apply. The trial court found that Monasco purchased personal property only.

### C.    Monasco Purchased Personal Property

In its finding of fact number two, the trial court indicated that "[M]embers of the Club own a share in the Club and the right to occupy the cabins and to enjoy the rights of membership in the

---

[4]The trial court found that Monasco attended the board meeting of the Club in June 2005 seeking approval of a sale that permitted him to become a shareholder and member in the Club and that Monasco was aware of the prohibition against nonmembers not the spouse of a member from residing on Club property. The trial court further found that "CALVIN MONASCO is bound by Article 4, Section 5 of the by-laws of the Gilmer Boating and Fishing Club, as amended August 19, 1999, and is prohibited from permitting any adult person not his spouse from residing on Club property."

[5]The question of consideration has not been mentioned. However, it is apparent that in exchange for Club membership, which included use of the grounds for fishing privileges, the right to erect or move cabins, and use of the club water well, Monasco agreed to abide by the bylaw prohibiting nonmembers (except a spouse) from living with him on Club property.

[6]The statute of frauds provides that an agreement for the sale of real estate is not enforceable against a person unless it is signed by that person. *See* TEX. BUS. & COM. CODE ANN. § 26.01 (Vernon 2009); *Cate v. Woods*, 299 S.W.3d 149, 152 (Tex. App.—Texarkana 2009, no pet.).

9

Club. Ownership of the land is held by the Club." Monasco does not dispute the fact that he purchased a share in the Club. He contends, however, that he purchased a cabin, and not merely the right to occupy a cabin. Monasco contends the cabin so purchased was real, not personal, property. Here, there is ample evidence that Monasco purchased a share in the Club, as well as a cabin. That evidence does not, however, render the trial court's finding number two legally or factually insufficient.

The Club bylaws state that when a share in the Club is purchased, that share comes with cabin privileges. Article IV, Section 2 of the bylaws states: "ONLY MEMBERS CAN INVITE GUESTS, USE CLUB GROUNDS, ERECT OR MOVE CABINS OR OTHER STRUCTURES ON CLUB PROPERTY OR USE CLUB WATER WELL." Article IV, Section 4 of the bylaws states: "[O]NLY MEMBERS SHALL HAVE THE PRIVILEGE OF BUILDING A DWELLING ON CLUB PROPERTY. . . . ANY HOUSE OR STRUCTURE TO BE ERECTED OR MOVED ONTO CLUB PROPERTY MUST BE APPROVED BY THE BOARD OF DIRECTORS." These provisions indicate that one who purchases a share in the Club may erect or move a cabin with the approval of the board of directors. Monasco attacks finding number two because, as he states, it is contrary to the evidence. Finding number two, insofar as it states that members in the Club own a share in the Club and the right to occupy the cabins and then enjoy the rights of Club membership, merely recognizes the validity of Article IV, Sections 2 and 4 of the Club bylaws. There is no evidence in the record before this Court that contradicts this portion of the trial court's

10

second finding of fact. Even though the finding of fact is accurate, it is also undisputed that Monasco actually purchased and owns the cabin.

The final sentence in finding of fact number two indicates "ownership of the land is held by the Club." This finding indicates that Club members own the actual cabins, but do not own the land on which they are situated. From this, Monasco reads the entire finding to mean that he did not purchase a cabin, but merely the right to occupy the cabin. There is no factual finding that Monasco did not own the cabin. Indeed, there is ample evidence that Monasco purchased a cabin. Brown testified that Monasco asked the board to approve his request to purchase property (the lake house) from Monk. This request was approved. A bill of sale was prepared and executed documenting the purchase by Monasco from Monk of:

The following described personal property to-wit:

House located on Lot H of Twin Lakes with the property address of 1044 PR 1130, Gilmer, Texas 75645, together with membership in Twin Lakes.

Also in connection with this sale, a financing statement was executed and signed by Monasco in accordance with the Uniform Commercial Code. Each of these documents was filed of record with the Upshur County Clerk on June 29, 2005. Both Monk and Monasco testified that Monasco purchased the lake house from Monk. This evidence is undisputed.

That portion of finding of fact number two stating "ownership of the land is held by the Club" is disputed. If the land on which the lake house is situated is owned by the Club, the character of the lake house as personal, as opposed to real property, is implicated. That is

11

Monasco's core complaint. In this regard, Brown testified that when a share in the Club is purchased, it means that the shareholder owns one-thirtieth of the real estate because there are only thirty shares of Club stock. Earlier, Brown testified that when a Club member purchases a share of stock, they do not acquire any land ownership. Brown testified the Club owns all of the land. In fact, Article IV, Section 4 of the bylaws refers to building a cabin "ON CLUB PROPERTY." Monk testified that the owner of a lake house on Club property only pays property taxes on the house, not on the land on which it is situated. The Club pays property taxes on the land and owns the land.

This evidence is sufficient to provide a reasonable basis for differing conclusions by reasonable minds regarding ownership of the land on which the lake house purchased by Monasco is situated. Accordingly, this evidence is legally sufficient to support the trial court's finding that "ownership of the land is held by the Club." *See Crye*, 907 S.W.2d at 499. Further, we cannot conclude that the evidence in support of land ownership by the Club is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We, therefore, find the evidence in this regard to be factually sufficient. *See Cain*, 709 S.W.2d at 176. The trial court's finding of fact number two is, in its entirety, supported by sufficient evidence.

Monasco further complains of the trial court's conclusion of law number three, which provides:

> The Statute of Frauds do [sic] not apply to the transaction by and between David Monk and CALVIN MONASCO in that the same was not a real property

12

transaction, but a personal property transaction as described in the Bill of Sale (Exhibit P-3). As such, there is no requirement for the inclusion of a restrictive covenant in the Bill of Sale of the sort normally included in Deeds, nor is there any requirement for the contract of purchase to be performable within one year.

Monasco complains that the trial court erred in concluding that his purchase of the cabin was merely the purchase of personal property. A trial court's conclusions of law are reviewable to determine whether the law was incorrectly applied to the facts. *BMC Software Belgium*, *NV v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Heritage Res.*, *Inc. v. Hill*, 104 S.W.3d 612, 621 (Tex. App.—El Paso 2003, no pet.). Conclusions of law are reviewed de novo as legal questions. *Marchand*, 83 S.W.3d at 794. If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered a proper judgment, the erroneous conclusion of law does not require reversal. *Id.*

Monasco argues that because the evidence is undisputed he purchased a cabin from Monk, it necessarily follows that this was the purchase of real property. He claims that with the possible exception of mobile homes, Texas courts consider houses to be real property.[7] In support of his contention, Monasco relies on cases citing general propositions of law regarding the nature of real and personal property. The Texas Supreme Court has defined real property as "land, and generally whatever is erected or growing upon or affixed to land." *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640 (Tex. 2000). Personal property is defined broadly to include everything that is subject to ownership not falling under the definition of real estate. *Id.* "A

---

[7]There is no contention that the house in this case was a mobile home, and in fact, the evidence indicates that it was not a mobile home.

13

structure affixed to the land, like a bridge or a building . . . cannot be tangible personal property." *Guadalupe-Blanco River Auth. v. Pitonyak*, 84 S.W.3d 326, 336 (Tex. App.—Corpus Christi 2002, no pet.). Monasco cites additional cases which generally refer to houses as "real property," wherein the nature of the property is not in issue. While these cases recognize general propositions of law regarding real property, they do not specifically address the issue of whether a house affixed to the land can ever be considered personal, as opposed to real, property.

True, the general rule is that improvements become part of the land to which they are affixed. However, the general rule does not apply when there is evidence showing intent of the improver that the improvements remain personalty with the right to be removed. *Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 838 (Tex. App.—Austin 2004, no pet.). So, although improvements usually become part of the land, parties may agree that those improvements are personalty. *See Dennis v. Dennis*, 256 S.W.2d 964, 966 (Tex. Civ. App.—Amarillo 1952, no writ) (absent agreement, son's house moved onto land owned by his mother became permanently affixed and belonged to mother); *Lindsley v. Lewis*, 125 Tex. 630, 84 S.W.2d 994, 995–96 (1935) (landowner's oral agreement that brother could construct home and live on land did not give brother any interest in improvements); *Williamson v. Pye*, 18 S.W.2d 707 (Tex. Civ. App.—Beaumont 1929, no writ) (son built house on father's property with permission and with understanding that house belonged to son; even though house was not built with intention of moving it from father's land, house nevertheless remained personal property of son); *see also*

14

*Armstrong v. Mission Indep. Sch. Dist.*, 195 S.W. 895, 896 (Tex. App.—San Antonio 1917), *rev'd on other grounds*, 222 S.W. 201 (Tex. Comm'n App. 1920) (improvements placed on land by lessee with agreement it could be removed was personal property of lessee); *Clayton v. Phillip*, 159 S.W. 117 (Tex. Civ. App.—Fort Worth 1913, no writ) (purchaser of lot did not acquire rights to house located on that lot, as house constituted personal property of another pursuant to agreement between previous owner and owner of house). To avoid application of the general rule, a contrary intent must be clearly established:

> Everyone knows that in many cases that have been before the courts men erect structures and even very valuable improvements on lands of another under contracts, agreements, and evident intentions that such improvements shall never be a part of the land and never become the property of the land owner. When such conditions arise the improvements do not become real property but remain personal.

*Rogers v. Fort Worth Poultry & Egg Co*., 185 S.W.2d 165, 167 (Tex. Civ. App.—Fort Worth 1944, no writ) (upholding plea of privilege when evidence failed to establish Rogers owned the land on which his store was situated). This rule was also recognized in the earlier case of *Meers v. Fick-Reid Supply Corp*., 127 S.W.2d 493, 496 (Tex. Civ. App.—Amarillo 1939, writ dism'd) (property affixed to land of another under license from owner is personal property).

Here, Monasco is claiming the lake house he purchased from Monk is real rather than personal property. In concluding otherwise (and thus finding the statute of frauds does not apply to this transaction), we must determine if the trial court correctly applied the law to the facts. The facts indicate that the cabin was purchased pursuant to a bill of sale in which it was specifically

15

classified as "personal property." Further, a financing statement (form UCC 1) was executed and filed in the office of the Upshur County Clerk. A financing statement is filed for the purpose of perfecting a security interest in personal property in the possession of the debtor. *Crow-Southland Joint Venture No. 1 v. N. Fort Worth Bank*, 838 S.W.2d 720, 723 (Tex. App.—Dallas 1992, writ denied). A security interest is "an interest in personal property or fixtures which secures payment or performance of an obligation." Tex. Bus. & Com. Code Ann. § 1.201(b)(35) (Vernon 2009). Brown, president of the Club at the time of the sale, testified that the Club owns all of the land, and Club members do not acquire land ownership when purchasing a share of Club stock. Monk testified that he understood the cabin and share of Club stock sold under the bill of sale was personal property. Monk further testified that the land is owned by the Club and the Club pays the property taxes on the land. Rather than describing a conveyance of a particular tract of real estate, the bill of sale described the purchase as a "house located on Lot H of Twin Lakes . . . together with membership in Twin Lakes."

Monasco failed to present any evidence—other than to establish the cabin is affixed to the land—that the cabin he purchased was real property. The Club recognized the sale of the cabin as one of personal property, as the Club owned the land on which the cabin was situated. While this case does not fit strictly within the exception to the rule that houses affixed to the land are generally considered to be real property, the evidence here establishes that the Club and Monk understood the cabin to be personal property. Even though Monasco contends the cabin to be real

16

property, his signature on the bill of sale designating same as personal property indicates that he was at least aware of the fact that the cabin was characterized as personal property at the time of the sale.[8] We conclude the trial court correctly applied the law to the facts in determining that the cabin Monasco purchased from Monk was personal property.

### D.    The Statute of Frauds Does Not Apply

Monasco contends the trial court erred in concluding the statute of frauds does not apply to the transaction between Monasco and Monk.   In this regard, the trial court concluded that "there is no requirement for the inclusion of a restrictive covenant in the Bill of Sale of the sort normally included in Deeds, nor is there any requirement for the contract of purchase to be performable within one year."

Monasco initially contends that an agreement for the sale of real property is not enforceable against a person unless it is in writing and signed by that person.   TEX. BUS. & COM. CODE ANN. § 26.01.   Because we hold that Monasco's lake house purchase was not a purchase of real property, we further conclude the trial court correctly found that the statute of frauds does not apply to the transaction between Monasco and Monk.

---

[8]Monasco did not dispute this characterization until the issue of Larry's continued residence in the cabin caused problems.

17

Monasco next contends that the trial court erroneously concluded[9] that he is bound by the prohibitions of Article IV, Section 5 of the bylaws prohibiting him from permitting any adult person not his spouse from residing on the property located at 1044 PR 1130 in Gilmer. Monasco bases this contention on the fact that this restriction is permanent, is not subject to performance within one year, and, therefore, violates the statute of frauds. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(6) (to be enforceable, an agreement which is not to be performed within one year from date of making of agreement must be in writing and signed by person to be charged with agreement).[10]

The Club responds that Monasco waived any complaint about the trial court's findings and conclusions that the statute of frauds does not apply. The Club contends that because the trial court's findings of fact "form the basis of the judgment upon all grounds of recovery and of defense embraced therein," Monasco's failure to request findings in support of his statute of frauds defense results in waiver on appeal. *See* TEX. R. CIV. P. 299.

Although it is not clearly spelled out in its brief, the Club is apparently claiming that

---

[9]Conclusion of law number one provides:

> Declaratory Relief in conformity with the Uniform Declaratory Judgment Act, Chapter 37, of the Civil Practice and Remedies Code of Texas, is appropriate and should be granted, declaring that Calvin Monasco is subject to the prohibitions of Article 4, Section 5 of the by-laws of the Gilmer Boating and Fishing Club, as amended August 19, 1999, prohibiting him from permitting any adult person not his spouse from residing on the property located at 1044 PR 1130, Gilmer, Texas.

[10]The evidence indicates that Monasco never signed a written agreement wherein he agreed to abide by the Club bylaws, and in particular, the bylaw restricting who may reside in the cabin Monasco purchased from Monk.

18

Monasco cannot now claim the trial court erred in failing to apply the statute of frauds to Monasco's agreement with the Club to abide by the Club bylaws because he failed to request a finding to indicate there was no writing signed by Monasco indicating his assent to be bound by the bylaws. The waiver argument does not carry the day. Rule 299 provides, in full, that:

> When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported on appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; *but when one or more elements thereof have been found by the trial court*, *omitted unrequested elements*, *when supported by evidence*, *will be supplied by presumption in support of the judgment*. Refusal of the court to make a finding requested shall be reviewable on appeal.

TEX. R. CIV. P. 299 (emphasis added).

"When a court makes findings of fact, but inadvertently omits an essential element of a ground of recovery or defense, the presumption of validity will supply the omitted element by implication." *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Here, the trial court specifically found:

> 4) Defendant CALVIN MONASCO was aware of the prohibition against nonmembers not the spouse of a member from residing on Club property at the time he sought membership in the Club through the purchase of the Club share from David Monk.
>
> 5) CALVIN MONASCO is bound by Article 4, Section 5 of the by-laws of the Gilmer Boating and Fishing Club, as amended August 19, 1999, and is prohibited from permitting any adult person not his spouse from residing on Club property.
>
> In finding that Monasco is bound by the Club bylaws, the trial court implicitly found the

19

bylaws to be a binding contract or agreement between the Club and Monasco.[11] The statute of frauds, set forth in Section 26.01 of the Texas Business and Commerce Code, provides that to be enforceable, a promise or agreement which cannot be performed within one year from the date of making the agreement must be in writing and signed by the person to be charged with the promise. TEX. BUS. & COM. CODE ANN. § 26.01(b)(6); *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982). Thus, an essential element of the statute of frauds defense is the existence of a promise or agreement between the Club and Monasco. Here, the presumption of validity will supply the omitted element, i.e., that no signed writing exists between the Club and Monasco indicating his assent to be bound by the bylaws.[12] We find no waiver of the statute of frauds defense on appeal.[13]

Whether a contract falls within the statute of frauds is a question of law. *Beverick v. Koch Power Co.*, 186 S.W.3d 145, 149 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A contract that could possibly be performed within a year, however improbable performance within one year may be, does not fall within the statute of frauds. *Niday*, 643 S.W.2d at 920 (stating that if an agreement, either by its terms or by the nature of the required acts, cannot be performed within one

---

[11]In its original petition, the Club specifically asked the trial court to declare that the Club bylaws are an enforceable contract between the Club and its members.

[12]The undisputed evidence establishes that no such signed agreement exists.

[13]The trial court's finding of fact number five is essentially the same as conclusion of law number one. Conclusions of law are reviewable to determine whether the law was incorrectly applied to the facts. *Marchand*, 83 S.W.3d at 794. Monasco essentially attacks this conclusion as being erroneous as a matter of law.

year, it falls within the statute of frauds and must be in writing). The fact that the entire performance within one year is not required or expected will not bring an agreement within the statute. *Id.*

Here, Monasco contends that the permanent restriction on who may reside with him in his lake house falls within the statute of frauds because, by its terms, it cannot be performed within one year. He points out that the restriction has been in force since 1999, six years before he purchased the cabin in 2005. According to the Club, Monasco orally consented to the restriction at the June 2005 board meeting, two years prior to the time the Club sought to enforce the restriction against him by filing suit seeking injunctive relief in 2007.[14]

The statute of frauds does not apply if performance could conceivably be completed within one year of the agreement's making. *Miller v. Riata Cadillac Co*., 517 S.W.2d 773, 776 (Tex. 1974) (contract to pay employee bonus after approximately one year could theoretically be performed before year expired); *Young v. Fontenot*, 888 S.W.2d 238, 241 (Tex. App.—El Paso 1994, writ denied) (agreement to transfer stocks at unspecified date in future was performable within one year and therefore not within statute). The duration of the agreement here was one which coincided with the duration of Monasco's membership in the Club. This could be for a lifetime or some other indefinite duration.

Agreements to last during the lifetime of one of the parties do not require a signed writing

---

[14]Texas courts have recognized that association bylaws constitute a contract between the parties. *Lundine*, 183 S.W.2d at 273; *Brown*, 194 S.W. at 1180; *Gaines*, 119 S.W. at 877.

because the party on whose life the duration of the contract is measured could die within a year of the agreement's making. *Young v. Ward*, 917 S.W.2d 506, 510 (Tex. App.—Waco 1996, no pet.). Likewise, agreements requiring performance of indefinite duration are generally not within the statute because such agreements could conceivably be performed within a year of their making. *Bratcher v. Dozier*, 162 Tex. 319, 346 S.W.2d 795, 796 (1961).

The Texas Supreme Court has also held that where an agreement cannot be completed within one year, either by its terms or by the nature of the required acts, that agreement falls within the statute and must be in writing. *Niday*, 643 S.W.2d at 920. That is, where an oral contract omits the performance term, duration may properly be implied from extrinsic evidence. If that evidence conclusively proves that the contract cannot be completed within one year, the contract violates the statute of frauds as a matter of law. *Id.*

There is no evidence here, extrinsic or otherwise, which conclusively proves the contract could not be completed within one year. It is, in fact, possible that the contract could be performed in one year in the circumstance the share and lake house were sold within that time.[15] Monasco points out that the restriction was in place for over two years at the time of trial. The objective determination of whether the contract could be performed within one year does not permit consideration of this factor. *See Keystone Int'l, Inc. v. Ingham*, 593 S.W.2d 354, 357 (Tex. Civ. App.—Texarkana 1979, no writ). "Texas courts . . . have generally held that, in the absence

---

[15]Monasco testified that he attempted to obtain the Club's permission to sell the share and the lake house to his son Ace but did not receive a response from the Club in this regard.

22

of a known date when performance will be completed, the statute of frauds does not apply if performance could conceivably be completed within one year of the agreement's making." *Young*, 917 S.W.2d at 509. Here, the contract could conceivably be performed within one year. Accordingly, the trial court correctly concluded that Monasco is bound by the prohibitions of Article IV, Section 5 of the Club bylaws prohibiting Monasco from permitting any adult person not his spouse from residing at the lake house.

## III.    CONCLUSION

We affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:      April 12, 2011
Date Decided:        April 27, 2011

23