

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00043-CV

IN THE ESTATE OF RONNIE M. PETTIT, DECEASED

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. P-18535

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

Ronnie M. Pettit died in 2014 and was survived by his widow, Eileen Ruth Pettit, and two adult sons from a prior marriage, Michael B. Pettit and John Grady Pettit. Eileen alleged that Ronnie died intestate and filed an application to determine heirship. At trial, John testified that Ronnie had a will, which was never produced. Eileen acknowledged that Ronnie had a will at one time but claimed that he destroyed it in her presence. As a result of the testimony, the trial court found that Ronnie died intestate and entered an order determining that Eileen, Michael, and John were Ronnie's heirs.

John appeals from the trial court's ruling and argues that it erred by (1) admitting Eileen's testimony that Ronnie destroyed his will, (2) finding that Ronnie died intestate, and (3) determining heirship without the testimony of two disinterested witnesses. We find that John was not harmed by the admission of Eileen's testimony because similar testimony was introduced without objection, that sufficient evidence supported the finding of intestacy, and that uncontested evidence established the identity of Ronnie's heirs. As a result, we affirm the trial court's judgment.

## I.    Factual and Procedural Background

It is uncontested that no written will belonging to Ronnie was produced within the statute of limitations for probating a will. Except for certain circumstances absent here, "a will may not be admitted to probate after the fourth anniversary of the testator's death." TEX. EST. CODE ANN. § 256.003. Well after that period had passed, Eileen filed an application to determine heirship and an application for administration and letters testamentary.

2

Eileen's application to determine heirship was supported by the affidavits of two disinterested witnesses, Anthony and Stacy Matthews. *See* TEX. EST. CODE ANN. § 202.007. The affidavits stated that Ronnie died intestate. They also established that Eileen was married to Ronnie at the time of his death and that he had only two children, Michael and John, from a prior marriage that was dissolved in 1984. No other heirs were listed. At the hearing, it was undisputed that Eileen, Michael, and John were Ronnie's only heirs. However, a dispute arose as to whether Ronnie had a will.

Eileen testified that she and Ronnie hired an attorney who prepared their wills in 2003. According to Eileen, under Ronnie's will (the 2003 Will), John was to receive farm equipment and thirty acres of land, Michael was to receive nothing, and Ronnie's remaining estate would pass to her. Yet, Eileen testified that she and Ronnie had destroyed those wills at the same time after they decided to sell the thirty-acre property in 2005. Eileen clarified that she witnessed Ronnie physically tear up the 2003 Will in her presence. She was not aware of Ronnie making another will. Even so, Eileen looked for another will after Ronnie's death, but never found one. As a result, she testified that Ronnie died intestate.

Ronnie's brother, John Keith Pettit (Keith), testified that he visited Ronnie, who "was very ill." According to Keith, Ronnie asked him to witness a purported will in his bedroom during one of those visits in late 2012 or early 2013 (the Bedroom Document). Keith testified that Ronnie wanted "Eileen to be taken care of financially," wished her to have the "[p]olice department pension, all [their] money, life insurance, [and] any financial stuff," but that John

would "get[] everything else."[1]  During cross-examination, Keith testified that the Bedroom Document had been previously typed, he did not know who prepared it, he was the only witness who signed it, no one else besides Ronnie was present, and he did not see Ronnie sign it.[2]  Keith said Ronnie was going to provide him with a copy of the Bedroom Document but never did.  He testified that he was unaware of any prior wills executed by Ronnie.

According to Keith's wife, Gini Pettit, Ronnie "wanted everybody in the family to know that[,] when he passed away . . . Eileen was going to get all his money and [John] was going to get everything else and that his other son, Michael, was not going to get anything because they were estranged."  Gini testified that she never saw Ronnie's will but that she was aware Ronnie had asked Keith to sign one.

At trial, John admitted that he "had a disagreement" with Ronnie in 2013 and "went a little bit without talking" to him.  Yet, John testified that he visited Ronnie in the hospital in November 2013 and that Ronnie told him that Eileen would "get[] his pension for the rest of her life," Michael would receive nothing, and John would "get everything."  John, who had never seen Ronnie's will, said that his father must have placed it in a safety deposit box "[m]ore than likely at Lamar National Bank."  In support of his claim, John introduced his 2019 text message chain with Eileen, which showed that the two were arguing and that John claimed Ronnie told

---

[1]Keith testified that Ronnie did not want Michael to inherit anything.

[2]Even though Keith did not see Ronnie sign the Bedroom Document, the parties refer to him as a witness.

4

him that he would receive everything except for his pension.[3] John had "[n]o doubt" that Eileen knew of a will that left everything to him.

Eileen was recalled after Keith, Gini, and John's testimony and affirmed that she knew nothing of the Bedroom Document or any other will except for the one Ronnie had destroyed. She testified that there was no will in the safety deposit box at the Lamar National Bank.

After hearing this evidence, the trial court found that Ronnie died intestate and entered a judgment declaring heirship.

## II.     John Was Not Harmed by the Admission of Eileen's Testimony

In his first point of error, John argues that, because it was hearsay, the trial court erred by admitting Eileen's testimony showing that Ronnie destroyed his 2003 Will. Our review of the reporter's record at trial reveals that the trial court never definitively ruled on John's hearsay objection. Even assuming an adverse ruling and assuming, without deciding, error, we conclude that John was not harmed by Eileen's testimony because he failed to object to similar testimony introduced without objection.

To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Further, the trial court must have "ruled on the request, objection, or motion, either expressly or implicitly," or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2). A party is "required to obtain an adverse ruling on their objection to preserve error for review." *Pilgrim's*

---

[3]The messages also showed that John alleged that Eileen "had [her] attorney VOID [Ronnie's] will."

*Pride Corp. v. Smoak*, 134 S.W.3d 880, 896–97 (Tex. App.—Texarkana 2004, pet. denied). Also, "a party's complaint on appeal must comport with the objection made at trial." *Great N. Energy, Inc. v. Circle Ridge Prod., Inc.*, 528 S.W.3d 644, 673 (Tex. App.—Texarkana 2017, pet. denied).

On direct, Eileen was asked about the places she had scoured in search of a will left by Ronnie. In response, she said, "Well, the [2003 Will] was destroyed by . . . my husband." John made a timely objection on hearsay grounds, but the trial court found the answer "nonresponsive" and instructed Eileen to answer counsel's question. As a result, the trial court did not make an adverse ruling on hearsay grounds at that time.

Later, when Eileen testified that her husband had revoked the 2003 Will, John objected to "the Dead Man's Rule and on hearsay."[4] The record shows that the parties engaged in a lengthy discussion about the Dead Man's Rule. While hearsay grounds were mentioned during that discussion, the parties were focused on the Dead Man's Rule, and the trial court did not make any definitive ruling on hearsay, as shown by the following portion of the transcript:

> And I think when the legislature enacted the Dead Man's Statute and used the words "oral statement", [sic] they meant oral statement, not a physical statement. And so I will overrule any objection to the testimony about the decedent tearing up the will.

---

[4]Under Rule 601 of the Texas Rules of Evidence, known as the Dead Man's Rule, "a party may not testify against another party about an oral statement by the testator, [or] intestate" in a civil case by or against a decedent's heirs. TEX. R. EVID. 601(b)(1)(B), (2). "[C]ourts construe the Dead Man's Rule narrowly." *Fraga v. Drake*, 276 S.W.3d 55, 61 (Tex. App.—El Paso 2008, no pet.); *see Coleman v. Coleman*, 170 S.W.3d 231, 238 (Tex. App.—Dallas 2005, pet. denied). The Dead Man's Rule "applies only to testimony about oral statements." *Zarsky v. White*, No. 14-20-00474-CV, 2022 WL 17491238, at *8 (Tex. App.—Houston [14th Dist.] Dec. 8, 2022, no pet.); *see* TEX. R. EVID. 601(b)(2). Eileen testified that Ronnie tore up the 2003 Will in her presence. Because she "did not testify as to what [Ronnie] said," John concedes that the trial court's ruling on the Dead Man's Rule was proper. *See Zarsky*, 2022 WL 17491238, at *8; TEX. R. EVID. 601(b)(2).

Now, if we have other statements, oral statements where he might say I don't want my son to get this or something, that's a whole different issue; but just the fact that he tore up his will I don't think is an oral statement that's covered by the Dead Man's Statute and so I will overrule any objection on that particular issue.

When the topic was mentioned again, the following occurred:

Q      . . . . Without getting into anything that your husband may or may not have told you since he is deceased, did you witness him physically tear up a copy of the will we're discussing?

A      Yes, sir.

Q      And to the best of your knowledge -- I used the word "copy".
         To the best of your knowledge, it was his will, correct?

A      Correct.

Q      Okay.  Did you --

[By John]:  And just for the record, Your Honor, same objection as before.

THE COURT:  I don't understand.

[By John]:  That you ruled -- on the Dead Man's objection that you ruled on, on these.  So I just wanted to, for the record, make the Dead Man's --

THE COURT:  To her testimony that that was her husband's will?

[By John]:  Right.

THE COURT:  Okay.  I'll overrule that objection.

We conclude the record shows that the trial court did not expressly rule on John's hearsay objection.

7

Even assuming an implicit ruling on John's hearsay complaint, we find that he was unharmed by any error. We reverse the trial court's judgment based on erroneous admission of evidence only if the error "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1). "The court's admission of evidence over objection is generally considered harmless if the objecting party later permits similar evidence to be introduced without objection." *Texarkana Mack Sales, Inc. v. Flemister*, 741 S.W.2d 558, 563 (Tex. App.—Texarkana 1987, no pet.) (citing *Richardson v. Green*, 677 S.W.2d 497 (Tex. 1984)).

The transcript above shows that John did not object on hearsay grounds and clarified that his objection was based on the Dead Man's Rule. On two other separate occasions, Eileen testified in the following manner, without objection:

> Q     Ms. Pettit, you're still under oath; and so, briefly, I want to try to get some clarification in my mind.
>               Your testimony is -- or I'm asking: The will that you knew your husband to have, he tore up?
>
> A     Correct.
>
> . . . .
>
> Q     To your knowledge, the only will that Mr. Pettit had was the one that he tore up?
>
> A     Correct.

Because Eileen testified, without objection, that Ronnie destroyed the 2003 Will, John cannot demonstrate that he was harmed by any alleged adverse hearsay ruling. As a result, we overrule John's first point of error.

8

### III.    Sufficient Evidence Supported the Finding of Intestacy

"A court may conduct a proceeding to declare heirship when . . . a person dies intestate . . . and there has been no administration in this state of the person's estate."  TEX. EST. CODE ANN. § 202.002(1).  In his second point of error, John argues that the trial court erred by finding that Ronnie died intestate.  We interpret John's argument as a challenge to the factual sufficiency of the evidence.

"When challenging the factual sufficiency of the evidence supporting an adverse finding on which the appealing party did not have the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding."  *Pettit v. Tabor*, No. 06-19-00002-CV, 2020 WL 216025, at *8 (Tex. App.—Texarkana Jan. 15, 2020, pet. denied) (mem. op.) (quoting *Monasco v. Gilmer Boating & Fishing Club*, 339 S.W.3d 828, 830 (Tex. App.—Texarkana 2011, no pet.)).  "The evidence is sufficient to support the adverse finding if the evidence is such that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence."  *Id.* (quoting *Monasco*, 339 S.W.3d at 830–31).  "A challenge to the factual sufficiency of the evidence will be sustained if the evidence is so weak or the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust."  *Id.* (quoting *Monasco*, 339 S.W.3d at 831) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

No will authored by Ronnie was ever produced.  Although Ronnie had made the 2003 Will, "[o]ne of the methods by which a will can be revoked is by destroying the original copy of the will."  *In re Est. of Wilson*, 252 S.W.3d 708, 713 (Tex. App.—Texarkana 2008, no pet.); *see*

TEX. EST. CODE ANN. § 253.002. Eileen's uncontested testimony that Ronnie tore up the 2003 Will in her presence established that it was revoked.

Next, John argues that the Bedroom Document constituted a will and cites his text message argument with Eileen in support.[5] Yet, the undisputed evidence at trial showed that the Bedroom Document could not constitute a valid will. "Except as otherwise provided by law, a will must be: (1) in writing; (2) signed by: (A) the testator . . . and; (3) attested by two or more credible witnesses who are at least 14 years of age and who subscribe their names to the will in their own handwriting in the testator's presence." TEX. EST. CODE ANN. § 251.051.

The law provides an exception for self-proved and holographic wills. The evidence at trial established that no "officer authorized to administer oaths" was present when Keith signed the Bedroom Document. *See* TEX. EST. CODE ANN. §§ 251.104(b), 251.1045(a). The evidence also established that the Bedroom Document was not a holographic will, which is "a will written wholly in the testator's handwriting." TEX. EST. CODE ANN. § 251.052. Keith testified that the Bedroom Document was typed. Because it was not wholly in Ronnie's handwriting, the Bedroom Document was required to be "attested by two or more credible witnesses." TEX. EST. CODE ANN. § 251.051; *see Triestman v. Kilgore*, 838 S.W.2d 547, 547 (Tex. 1992) (per curiam). At trial, nothing showed that anyone other than Keith had seen the Bedroom Document. As a

---

[5]John does not argue that Ronnie made a nuncupative will.

10

result, the Bedroom Document did not meet the basic requirements of a valid will.[6] *See* TEX. EST. CODE ANN. § 251.052.

Our review of the record shows that the trial court's finding of intestacy was firmly established by factually sufficient evidence. As a result, we overrule John's second point of error.

## IV. Uncontested Evidence Established the Identity of Ronnie's Heirs

Last, John argues that the trial court erred by entering a declaration of heirship without the testimony of two disinterested witnesses. As relevant here, "[i]n a proceeding to declare heirship, testimony regarding a decedent's heirs and family history must be taken from two disinterested and credible witnesses in open court." TEX. EST. CODE ANN. § 202.151(b). Although disinterested witnesses filed affidavits attached to Eileen's petition, they were not admitted at trial. For this reason, John asks that we reverse the determination of heirship.

"The court may require that any testimony admitted as evidence in a proceeding to declare heirship be reduced to writing and subscribed and sworn to by the witnesses." TEX. EST. CODE ANN. § 202.151. Although not required, Eileen's application attached the affidavits of two disinterested witnesses. *See* TEX. EST. CODE ANN. § 202.005 (containing requirements for application for proceeding to declare heirship). While John is correct that those affidavits were not attached, the purpose of Article 202.151(b)'s requirement is to secure an accurate determination of a decedent's heirs.

---

[6]Moreover, "a presumption of revocation arises when a will is not produced in court, and the will was last seen in the possession of the testat[or] or in a place to which []he had ready access." *In re Est. of Glover*, 744 S.W.2d 939, 940 (Tex. 1988) (per curiam); *see In re Est. of Wilson*, 252 S.W.3d 708, 713 (Tex. App.—Texarkana 2008, no pet.).

11

An heir is "a person who is entitled under the statutes of descent and distribution to a part of the estate of a decedent who dies intestate."  TEX. EST. CODE ANN. § 22.015.  In this case, it was undisputed that Ronnie had only three heirs, Eileen, Michael, and John.  Because the identity of the heirs was uncontested, we find that the trial court did not err in determining heirship without the testimony of two disinterested witnesses offered at trial.  As a result, we overrule John's last point of error.

## V.     Conclusion

We affirm the trial court's judgment.


                                        Charles van Cleef
                                        Justice

Date Submitted:     February 10, 2023
Date Decided:       March 2, 2023


12