

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00079-CV

_____

IN THE INTEREST OF R. N., R. N., R. N., CHILDREN

On Appeal from the 354th Judicial District Court
Hunt County, Texas
Trial Court No. 74,882

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Parents, Roy and Kimberly Neyens, appeal the termination of their parental rights to their three children, an action sought by the Texas Department of Family and Protective Services, Child Protective Services Division (CPS). Although the Neyenses make no challenge to the sufficiency of the evidence supporting the grounds for termination or finding concerning the best interests of the children, they complain of the trial court's exclusion of certain evidence and its refusal to declare a mistrial. We affirm the judgment of the trial court.

## I. Trial Court Did Not Erroneously Exclude Testimony Regarding Foster Home

### A. Standard of Review

The admission or exclusion of evidence is a matter within the sound discretion of the trial court, which is reviewed under an abuse of discretion standard. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *In re R.A.L.*, 291 S.W.3d 438, 446 (Tex. App.—Texarkana 2009, no pet.). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). "We will not conclude the trial court abused its discretion merely because, in the same circumstances, we would have ruled differently." *Manasco v. Ins. Co. of State of Penn.*, 89 S.W.3d 239, 241 (Tex. App.—Texarkana 2002, no pet.).

"To reverse a judgment based upon error in the admission or exclusion of evidence, the appellant must show that the trial court committed error and that the error was reasonably

2

calculated to cause and probably did cause rendition of an improper judgment." *R.A.L.*, 291 S.W.3d at 446 (citing TEX. R. APP. P. 44.1(a)(1); *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992)). In making this determination, we must review the entire record.

## B. The Record

The Neyenses attempted to introduce evidence of their concerns about certain medications which were being administered to the children, an alleged instance of sexual abuse, and injuries sustained while the children were under foster care. CPS objected to this line of questioning during the cross-examination of Kerry Brown, an employee of CPS. Counsel for Mr. Neyens argued that Brown's testimony

> goes to the – [parents'] level of cooperation and completion of services and trust with CPS. And that – that whole trust level was broken down at the time. That they didn't feel it was handled, the situations with the children, adequately. And also supports our argument that they're good parents and their vigilance as to the care or lack thereof that their children were receiving in care. So he feels that it really impacts his case in terms of his service completion and best interest of the children.

An offer of proof was made outside of the presence of the jury. With respect to medication being given to the children, Brown merely testified that the children were prescribed medication by a psychiatrist who was treating them, but the parents disagreed with administration of the medication. As to allegations of sexual abuse of the children, Brown testified that although one of the children alleged "that another child in the home was giving him a butt massage," an investigation by CPS into the incident initially ruled out the alleged sexual abuse. However,

3

concerns arose as to whether the child was coached by the foster mother, and all of the Neyenses' children were removed from that foster home and placed in a different foster home, as the Neyenses had requested.

The trial court sustained CPS's objection to this testimony, stating:

What happened in foster care has nothing to do with whether there [were] grounds to remove the children in the first place and secondly, whether the parents have responded appropriately that termination should not occur.
      If down the road we get into a situation as to who should be the managing conservator of these children, if they're not terminated, then I think the conduct of what happened in foster care may be relevant.
      But as to the issue of termination it's not. . . .
      So I'll instruct counsel not to enquire further about the condition or treatment of the children in foster care for the purpose of this hearing.

Later in the trial, counsel for Mr. Neyens completed the cross-examination of Court Appointed Special Advocates (CASA) case supervisor, Shila Whitaker. Counsel "pass[ed] the witness," asked the trial court to approach the bench, and told the judge that "[t]here are some questions I need to ask [Whitaker] outside the presence of the jury, about the foster home incident, for the record." Noting that "[t]his is an offer of proof outside the presence of the jury," the court heard testimony from Whitaker on voir dire that one of the Neyenses' children indicated that he had received a butt massage from a foster brother. Whitaker also testified that the children had sustained injuries while they were left under the care of a teenager during placement in another foster home. She noted these injuries during a supervised visitation and described them as a cut over the right eye, bruising on the face, and "divots" on the face. CASA's investigation of the

4

injuries led Whitaker to believe the injuries were sustained "[w]hen they were riding their bikes. . . . through trees." After the testimony was taken, the court stated that "the offer of proof is concluded."

## C.    Analysis

The Neyenses argue that while "the trial court was correct in ruling that what happened in foster care had nothing to do with the grounds for termination and whether the parents responded appropriately," the "conditions and treatment of the children in the foster homes was critical to the consideration of the determining factors regarding whether termination was in the children's best interest."[1]  The Neyenses maintain that the trial court erred in excluding the testimony of Brown and Whitaker concerning the alleged sexual abuse incident, the injuries to the children, and the matter of medication while in foster care.

### 1.    *The Neyenses failed to secure an adverse ruling with respect to Whitaker's testimony*

"To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court."  *Lister v. Walters*, 247

---

[1] In deciding whether termination would be in the best interest of the child, a trial court considers this nonexclusive list of factors:   (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.  *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  The Neyenses do not independently challenge the sufficiency of the evidence supporting the best interest determination.  Rather, they contend that the evidence of treatment in the foster home was relevant to factors three, four, and seven, which are considered when making the best interest finding, and therefore, the evidence should have been admitted.

5

S.W.3d 381, 383 n.1 (Tex. App.—Texarkana 2008, no pet.) (quoting *Perez v. Lopez*, 74 S.W.3d 60, 66 (Tex. App.—El Paso 2002, no pet.)).

While an offer of proof was made as to Whitaker's testimony, the record demonstrates that it was made after the witness was passed by the counsel and outside the presence of the jury on voir dire. However, after having made a record of the testimony, counsel made no attempt to proffer this testimony, either during cross-examination or after the offer of proof had concluded. In other words, although the record of the intended testimony was made, no request was made of the court to allow the introduction of that testimony. The trial court did not rule on the admissibility of the testimony because it had not been offered. Because the trial court did not rule "on the request, objection, or motion, either expressly or implicitly," or did not refuse "to rule on the request, objection, or motion," the Neyenses failed to preserve the issue of alleged error in failure to admit Whitaker's testimony. TEX. R. APP. P. 33.1.

This point of error is overruled.

### 2. *Trial court did not err in excluding Brown's testimony*

The Neyenses argue that "the jury was prevented from adequately considering the current and future emotional and physical danger of the children, the parenting abilities of the persons seeking custody and the stability of the home of proposed placement" because the trial court did not admit Brown's testimony of the alleged sexual abuse and concern about medications administered to the children.

6

Mrs. Neyens was able to testify that investigations had been conducted of two foster homes where the children were placed. As a result of these investigations, she told the jury that although the allegations of sexual assault had never been substantiated, the children were, nonetheless, removed from the foster home where the incident was reported and were placed in a different foster home. The newer foster parents were interested in adopting two of the three children.

Counsel for the Neyenses advanced the theory that Brown's testimony would be relevant to the finding regarding the best interests of the children. The trial court could have determined that allegations of sexual abuse occurring at a previous foster home were not relevant to the best interest finding since the children had been removed from that home. Specifically, the court could have ruled that the allegation of sexual abuse in the previous placement would not affect the "current and future emotional and physical danger of the children," "the parenting abilities of the persons seeking custody," or the "stability of the home of proposed placement." Additionally, the trial court could have further found the testimony that the parents were concerned about the children's medications being administered to the children by a psychiatrist inconsequential to the best interest inquiry.

It might be said that the incidences involving the children and the complaints of the parents regarding those incidences reflect adversely on the past choices made by CPS concerning the placement of the children, choices which might be somewhat relevant as predictors of likely possible bad future choices, which might adversely affect the children. If one adopts that

7

viewpoint, it could be said that the evidence which was sought was not entirely irrelevant. However, the Texas Rules of Evidence also prescribe that even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." TEX. R. EVID. 403. In these circumstances, it appears that CPS acted promptly and in what appears to be an abundance of caution, to what seems to have been unsubstantiated problems, removing the children from the foster home in which they were located. The trial court could easily have believed that the trial concerning the welfare of the children could deteriorate into a trial on the practices of CPS in its selection of foster homes, thwarting the primary object of the trial itself. Accordingly, the trial court could have believed that the danger of confusion of the issues outweighed the probative value of the tales concerning the post-removal experiences of the children. The trial court was within its discretion in excluding this testimony.

For the reasons stated above, we find no abuse of discretion in the trial court's ruling.

Moreover, there is nothing to establish (even if one assumes the trial court erred in its ruling), that the assumed error was "reasonably calculated to cause and probably did cause

8

rendition of an improper judgment." *R.A.L.*, 291 S.W.3d at 446.[2]  The Neyenses make no challenge to the sufficiency of the evidence supporting the best interest finding made by the jury.[3]

We overrule this point of error.

## II.  Trial Court Did Not Abuse Its Discretion in Denying Motion for Mistrial

Prior to trial, the court granted a motion in limine prohibiting any "reference to alleged criminal activity on the part of ROY NEYENS that occurred before the birth of the children or occurred outside the presence of the children or outside their sphere of awareness."  During cross-examination of therapist Carolyn Jewett, the motion in limine was violated, producing the following transcript:

> Q.    And that's – and would – would you elaborate?  Is there anymore basically to tell the jury of how you got to your evaluation that some of them—some of the questions were answered dishonestly?
>
> A.    Well a lot of it is also subjective.  A lot of it is talking to them. Talking about their history.  You know, she was married that first time at age 13. He's 20 years older than she is.  There was a lot of dysfunction all throughout their family life.  I believe this is the fourth time CPS has intervened in their – into their life, with their children.  There was a lot of dysfunction as far as fighting.  Even though there's no domestic violence legally there, due to his criminal history there –
>
> MR. PARIS:   Objection, Your Honor.
>
> THE COURT:   Sustain.

---

[2] The *Holley* factors are not exhaustive, no single consideration is controlling, and a fact-finder is not required to consider each factor.  *Holley*, 544 S.W.2d 367.

[3] Rather, the Neyenses contend that "[e]vidence regarding the best interest of the children in this case was critical and disputed."  The Neyenses' brief cites to a portion of the record supporting the best interest finding.  The dispute is left to the fact-finder to resolve.

9

A. Charges that he had a criminal history –

MR. PARIS: Objection, Your Honor. May we approach?

MS. ARMSTRONG: Your Honor –

MR. PARIS: I'm this close to moving for a mistrial.

MS. ARMSTRONG: Okay. Your Honor, this is for purposes of medical diagnosis and treatment. She has to do an analysis based on the person's entire life. She's informed by them of their –their criminal history. Ms. Jewett is speaking as a doctor. . . .

MR. PARIS: The jury can hear every word counsel is saying, Judge.

MS. ARMSTRONG: Okay. I'm sorry. I'm not trying – I'm not trying to talk loud.

THE COURT: We'll take a break.

As the trial court directed, the jury was removed and the Neyenses "move[d] for a mistrial for a direct violation of this court's motion in limine." Counsel stated,

It's obvious that this witness was not prepped in any way . . . . That it's obvious she wasn't instructed by counsel, as counsel was instructed by this court to do, not to mention certain things. And she mentioned it. I objected and she mentions it again the very next thing. We move for mistrial.

There's no way that prejudice can be removed from this – this jury. They heard it and then they – they could hear, because I backed up to see how loud it was. They could hear Ms. Armstrong's stage whisper to the court, in order to try to make a record. I understand, but none the less, in the presence of the jury. Those things were heard. The explanations by Ms. Armstrong were heard and the damage has been done.

10

"[A] motion in limine is a preliminary ruling by a trial court." *Onstad v. Wright*, 54 S.W.3d 799, 805 (Tex. App.—Texarkana 2001, pet. denied). It is a "procedural device that permits a party to identify, before trial, certain evidentiary rulings that the court may be asked to make so as to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury." *Id.* (citing *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex. 1963), *abrogated on other grounds by Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231 (Tex. 2007); *Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 757 (Tex. App.—Fort Worth 1998, no pet.)). The purpose of a motion in limine is thus to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. *Id.* (citing *Weidner v. Sanchez*, 14 S.W.3d 353, 363 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). When a trial court issues an order granting such a motion in limine, the opposing party has a duty to comply with that order and to instruct the witnesses to do the same, and noncompliance with that order may lead to contempt or other sanctions the trial court deems appropriate. *Id.*

We review a violation of an order granting a motion in limine "to see if [the violation is] curable by an instruction to the jury to disregard them." *Id.* (citing *Dove v. Dir., State Employees Workers' Comp. Div.*, 857 S.W.2d 577 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). "Violations of an order on a motion in limine are incurable if instructions to the jury would not eliminate the danger of prejudice." *Id.* (citing *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex. 1962);

11

*Kendrix v. S. Pac. Transp. Co.*, 907 S.W.2d 111, 114 (Tex. App.—Beaumont 1995, writ denied); *Dove*, 857 S.W.2d at 580). The violation of a motion in limine may entitle a party to relief, but any remedies available with regard to such a violation lie with the trial court. *Id.* at 806 (citing *Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim. App. 1972)). If its order has been violated, the trial court may apply the sanctions of contempt or take other appropriate action. *Id.* (citing *Lewis v. State*, 627 S.W.2d 492, 494 (Tex. App.—Houston [1st Dist.] 1981, no pet.)).[4]

The Neyenses argue that the trial court should have granted a mistrial in order to eliminate the danger of prejudice, urging that the failure to do so was error. The trial court has discretion to grant or deny a motion for mistrial. *Id*. at 808 (citing *Schlafly v. Schlafly*, 33 S.W.3d 863, 868 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)). In reviewing the trial court's decision, an appellate court does not substitute its judgment for that of the trial court, but decides whether the trial court's decision constitutes an abuse of discretion. *Id.* (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)).

The trial court denied the Neyenses' motion for mistrial, stating,

There has been no specifics of any sort mentioned in which criminal past could include a traffic ticket. But I will instruct the witness not to testify further about the criminal record . . . . as the criminal record that the court's aware of is remote in time and inconsistent with any of the allegations that are the basis of this lawsuit.[5]

The Neyenses failed to move to strike Jewett's testimony regarding Mr. Neyens' criminal record, and failed to ask the court to instruct the jury to disregard Jewett's statements about

[4]The Neyenses did not challenge the admissibility of this testimony, and we do not address admissibility.
[5]After the break, the trial court neglected to admonish the witness.

criminal charges. By denying the motion for mistrial, the trial court could have concluded the alleged violations insufficiently consequential to warrant the severe sanction of a mistrial. The court could also have determined that any prejudice resulting from mention of criminal charges could have been cured by an instruction to the jury to disregard had such a request been made. In either event, we find the trial court acted within its discretion. *See Opuiyo v. Houston Auto M. Imports, LTD*, No. 14-09-00894-CV, 2011 WL 61853, at **3–4 (Tex. App.—Houston [14th Dist.] Jan. 6, 2011, no pet.) (mem. op.). We overrule the Neyenses' issue regarding asserted violations of the order granting the motion in limine.

## III. Conclusion

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:     December 5, 2011
Date Decided:       December 9, 2011

13