

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00005-CV
_____

CITY OF LUFKIN, TEXAS, A MUNICIPAL CORPORATION, Appellant

V.

AKJ PROPERTIES, INC., ROLLIN' J TRANSPORTATION, INC.,
AND ALTON KIRK JOHNSON, Appellees

On Appeal from the County Court at Law #1
Angelina County, Texas
Trial Court No. 16373

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

The dispute between Alton Kirk Johnson and wife, Aliene Johnson (the Johnsons), and two Johnson companies,[1] on one side, and the City of Lufkin (the City), on the other, centers around how the Johnsons used their land during the fall of 2006, when the City was annexing the Johnson property into the City, and thus whether they qualified to continue a nonconforming use, notwithstanding the new contrary zoning by the City. From a jury verdict and a judgment favoring the Johnsons, the City appeals, attacking the sufficiency of the evidence and the trial court's rulings that denied the City's requested jury questions and excluded the City's tendered 2009–2010 photographs. We affirm the trial court's judgment, because (1) sufficient evidence supports the jury's finding of the Johnsons' pre-existing use, (2) refusing the City's requested jury instructions was not error, and (3) excluding the 2009–2010 photographs was not error.

The Johnsons had determined that a certain ten-acre tract of land—land with highway frontage in an unincorporated area of Angelina County[2] just outside the city limits of Lufkin— was an ideal location for their heavy equipment transport and repair business. In December 2005, the Johnsons purchased the property, on which a single house was situated. Plans were developed to establish the business office in the house already on the property. After having

---

[1] Aliene Johnson is the owner of AKJ Properties, Inc. (AKJ). AKJ owns various rental properties around Angelina County, including the subject property. Alton Kirk Johnson is the owner of Rollin' J Transportation, Inc. (RJT), a heavy equipment transport and repair company. Although these two companies are involved, the corporate identities or formalities are not at issue here. Therefore, we will refer mainly to the Johnsons in this opinion.

[2] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

obtained a permit from the Texas Department of Transportation (TX-DOT) in January 2006, the Johnsons built a commercial driveway on the property's highway right-of-way.

A few months later, on November 7, 2006, the City instituted, and shortly thereafter completed, annexation proceedings that covered the land in question.[3]  After completing the annexation, the City passed an ordinance zoning the subject property for agricultural use[4] and later filed a declaratory judgment lawsuit seeking to enjoin the Johnsons from operating their commercial business on the annexed property.  The Johnsons claimed they were entitled to a nonconforming use permit.  *See* TEX. LOCAL GOV'T CODE ANN. § 43.002 (West 2008). Specifically, they claimed that the land was used for commercial purposes before annexation was instituted and that they had begun to use the land in the intended fashion ninety days before the effective date of the annexation.  After a jury trial, the trial court entered judgment against the City, granting the nonconforming use status under the City's zoning restrictions.

---

[3]Lufkin instituted annexation procedures for an area known as Area G-5, which included the subject property located at the southwest corner of Farm to Market (FM) Road 324 and Highway 59S.  On November 7, 2006, Lufkin conducted a public hearing and considered on first reading an ordinance annexing Area G-5.  A second public hearing took place November 21, 2006, at which Lufkin considered the ordinance on second reading, and passed the ordinance annexing Area G-5 within the boundary limits of the City of Lufkin effective January 2, 2007.

[4]Ordinance 3936 indicates "that the Land Use Plan designation on the above mentioned 359.5 acres of land described (generally known as Area G-5) shall be, and the same hereby is changed to correspond with the Appendix to Ordinance 3936 and Exhibit 'A.'"  Neither the appendix to the ordinance nor exhibit "A" are a part of the record before us.  Neither party disputes the assertion that Area G-5 is currently zoned for agricultural use only.

3

*(1)    Sufficient Evidence Supports the Jury's Finding of the Johnsons' Pre-Existing Use*

The City claims the evidence is legally and factually insufficient to support the jury's verdict regarding its answers to questions one, two, and four.[5] No sufficiency challenge is posed with respect to the jury's answer to question number five.[6]

In reviewing a legal sufficiency complaint of an adverse finding on which the appellant did not have the burden of proof, the appellant must demonstrate on appeal that no evidence supports the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Monasco v. Gilmer Boating & Fishing Club*, 339 S.W.3d 828, 830 (Tex. App.—Texarkana 2011, no pet.). A legal sufficiency challenge will be sustained only when the record discloses (1) a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (4) the evidence established conclusively the opposite of a vital fact. *King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Monasco*, 339 S.W.3d at 830. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharms.*,

---

[5]These questions asked the jury whether (1) AKJ was using the property for selling and purchasing heavy machinery and equipment on November 7, 2006, (2) AKJ was using the property as a storage area for the loading and unloading of heavy machinery and equipment on November 7, 2006, and (4) AKJ was using the property as a business office on November 7, 2006.

[6]This two-part question asked the jury whether (1) AKJ began to use the property in the manner that was planned for the land before the ninetieth day before November 7, 2006, and (2) AKJ completed an application for a permit with a governmental entity before November 7, 2006. Whether the City's failure to challenge these jury findings on appeal renders moot its attack on the sufficiency of the evidence to support the jury's answers on issues one, two, and four is not made an issue by the parties in this appeal.

*Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Evidence that is so weak as to do no more than to create a mere surmise or suspicion is no more than a scintilla and is therefore no evidence. *Id.*

In reviewing the legal sufficiency of the evidence, we are to consider all of the evidence in the light most favorable to the verdict, indulging every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). When the evidence allows only one inference, "neither jurors nor the reviewing court may disregard it." *Id.*

When challenging the factual sufficiency of the evidence to support an adverse finding on which the appealing party did not have the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Monasco*, 339 S.W.3d at 830. In our review, we consider all the evidence supporting and contradicting the finding. *Plas-Tex*, *Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Solutioneers Consulting*, *Ltd.*, *v. Gulf Greyhound Partners*, *Ltd.*, 237 S.W.3d 379, 385 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

The evidence is sufficient to support the adverse finding if the evidence is such that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn therefrom. *Cendant Mobility Servs. Corp. v. Falconer*, 135 S.W.3d 349, 352 (Tex. App.—Texarkana 2004, no pet.). Conversely, a factual-sufficiency challenge will be sustained if the evidence is so weak or the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). With these

standards in mind, we evaluate the evidence presented in support of the jury's answers to questions one, two, and four.

Dorothy Wilson, planning director for the City, testified that she drove out to look at the Johnson property approximately six times before annexation to determine how the land was being used. While she observed a residential home and fencing, Wilson did not see any signs of a commercial business operation. Wilson admitted that, while driving around to determine pre-existing commercial use, she missed a nearby mobile home park.

Two neighbors in the vicinity testified that, before annexation, there was only a house on the property. One neighbor testified there was no heavy equipment on the property before annexation.

Don Langston, a council member for the City, testified that he drove the area encompassing the property "half a dozen times" before annexation and that there was no activity on the property. During 2006, Langston never saw machinery lined up for sale on the property—the only equipment he observed was that which was used for improvement purposes.

On the other hand, the following paragraphs set out testimony from the Johnsons' perspective concerning the use of the property during the time in question.

Alton testified that AKJ purchased the property from George Clark in August 2005. Clark agreed to permit AKJ to take possession of the property before closing, in exchange for AKJ's agreement to take over all expenses and utilities associated with the property.[7] Even

_____

[7]The warranty deed transferring ownership of the property was executed in December 2005.

6

though AKJ did not actually lease the property to RJT until January 2006, RJT started using the property before the lease was signed.

In August 2005, after paying earnest money to Clark, AKJ began using the property. During that month, according to trial testimony, AKJ purchased one piece of heavy equipment and sold four items of heavy equipment. Of the equipment sold, a mobile trailer and a used 2000 Kenworth tractor were on AKJ property at some point that month. Even though some of the equipment AKJ sold was never physically located on AKJ property, the business transactions and the documentation of those transactions took place there.

The following month, AKJ sold five pieces of heavy equipment to various entities. Only a dozer sold to J&H Equipment in Gladewater was located on AKJ property that month.

In October and November 2005, AKJ purchased two pieces of heavy equipment and sold four. Of the items sold, an excavator sold to Denmar Enterprises and a hydraulic hammer sold to Allied Erecting were located on AKJ property. A dozer AKJ purchased was also on the property for a time.

In December 2005 and January 2006, AKJ sold four items of heavy equipment. Among these items, a Kenworth tractor, an excavator, and a dozer were on AKJ property during this time frame.

In February through April 2006, AKJ sold six items of heavy equipment and purchased six items of heavy equipment. Among these items—a dozer, a loader, backhoe, and an asphalt paver were located on AKJ property.

7

In May through July 2006, AKJ sold three items of heavy equipment and purchased one item of heavy equipment. Among these items—a dozer purchased from Capco was located on AKJ property. In June, an excavator sold to Allied Erecting was located on AKJ property and was later transported by AKJ to Ohio at the behest of Allied. When asked about certain photographs depicting two excavators on AKJ property being loaded for transport, Alton explained that the equipment was being transported from Ohio to Las Vegas for an equipment show. The equipment was brought to the City for a layover before transport to Las Vegas. This was also an Allied project, which Alton testified took place in January 2006. On cross-examination, Alton testified that the photographs were not taken in January 2007 after the culvert was installed.[8]

In October through December 2006, AKJ sold five items of heavy equipment. Two of these items—a Peterbilt tractor and trailer, were on AKJ property during this time frame.

Alton testified that, regardless of whether equipment he sold and/or purchased ended up on AKJ property, all of the sales transactions and invoices were drawn up at AKJ's business office located on the property. The house on the property was AKJ's corporate office leading up to annexation. AKJ's business deals, made all over the country, are reduced to paper and maintained in the business office.

---

[8] Alton testified that it was necessary to construct a commercial driveway in order to get heavy machinery and equipment onto the property. To that end, in January 2006, Alton applied for an "access permit deviation" from TX-DOT in order to construct the commercial driveway and culvert. The permit was issued by TX-DOT January 31, 2006. Alton testified that he could not legally construct a commercial driveway on the property without the permit from TX-DOT. Alton initially constructed a driveway himself. The weight of the trucks crushed the driveway and the culvert. The second commercial driveway and culvert were completed in March 2006.

Admittedly, Alton testified that every piece of equipment on AKJ property was used on the property to improve it.[9] Lufkin asserts that, because the equipment was used to improve the property, its presence on AKJ property is not indicative of an ongoing commercial enterprise. Instead, it is entirely consistent with the Johnsons' claim that they were preparing the property for commercial use.

Aliene testified that she and Alton did not make improvements to the property before they began using it to operate the business. The improvements and the commercial operation paralleled one another.

The City would have this Court entirely discount Alton's testimony in our review of the evidence because of the claim that the jury's credibility determination of that testimony was unreasonable and that the testimony is "not credible as a matter of law." The City cites *City of Keller*, 168 S.W.3d at 819, in support of this proposition. There, the high court observed that the jury is not free to believe testimony that is conclusively negated by undisputed facts. This rule is typically applied to a jury's decision to disbelieve conclusive testimony. *See, e.g.*, *One Ford Mustang v. State*, 231 S.W.3d 445, 454 (Tex. App.—Waco 2007, no pet.) (trial court not free to disbelieve undisputed, clear, positive, and direct testimony of "all the witnesses" on issue of whether owner of confiscated property knew or reasonably should have known of purchaser's involvement in narcotics trafficking); *Schwartz v. Pinnacle Commc'ns*, 944 S.W.2d 427, 435 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (uncontroverted testimony of interested witness

---

[9]Alton's testimony does not go so far as to say that the equipment was used *only* for improvements, and not for sale. Also, while it is not difficult to envision the use of backhoes, excavators, dozers, and asphalt pavers to improve the property, there is no explanation as to how escort trucks, transport trucks, two Kenworth tractors, a mobile trailer, and a Peterbilt tractor and trailer could be used to improve the property.

9

was clear, direct, positive, and free of suspicious circumstances, and should not have been disregarded). Here, the City would have this Court conclude that the jury was not free to believe Alton's testimony. We disagree.

During the extensive cross-examination of Alton, various inconsistencies and inaccuracies in prior deposition testimony, as is often the case in trials, were revealed. On re-direct examination, however, Alton was able to clarify his responses, admit that he made a mistake, or explain that he was confused by the question. Counsel for Alton contends, additionally, that many of the questions asked of Alton at trial—now used to claim his testimony is not credible as a matter of law—were misrepresentations of the evidence and of the testimony given at trial.

The jury heard all of the testimony and evidence, including the City's impeachment efforts directed at Alton's testimony. The jury was free to evaluate Alton's credibility and his demeanor, along with the credibility and demeanor of all of the witnesses who testified. "Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary." *City of Keller*, 168 S.W.3d at 819 (citations omitted).

The evidence in support of the jury's answers to questions one, two, and four "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," and is thus legally sufficient. *See Ridgway*, 135 S.W.3d at 601. This Court may not substitute its judgment for that of the jury, so long as the evidence falls within the zone of reasonable

10

disagreement.  *City of Keller*, 168 S.W.3d at 822.  We further find the evidence to be factually sufficient to support the jury's findings, as reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence.  *See Falconer*, 135 S.W.3d at 352.

*(2)    Refusing the City's Requested Jury Instructions Was Not Error*

The City asserts error in the trial court's refusal to submit particular instructions the City viewed as crucial to the jury's understanding of what legally constitutes the "use" of property. AKJ[10] contends the City failed to preserve error related to the trial court's refusal to submit its proposed instructions because it failed to properly submit the instructions and to object when the instructions were not included in the court's charge.

When the trial court omits a requested instruction from the jury charge, the proponent must request and tender to the trial court a substantially correct instruction in writing.  TEX. R. CIV. P. 278; *Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 159 (Tex. App.—San Antonio 2008, pet. denied).  If the party fails to tender a substantially correct instruction in writing, any error by the trial court in not submitting the instruction to the jury is waived.  *Medistar Corp.*, 267 S.W.3d at 159; *Hartnett v. Hampton Inns, Inc.*, 870 S.W.2d 162, 166 (Tex. App.—San Antonio 1993, writ denied).  Moreover, to preserve error, the record must show that the omitted instruction was tendered to the trial court and the trial court refused it.

> When an instruction, question, or definition is requested and the provisions of the law have been complied with and the trial judge refuses the same, the judge shall endorse thereon "Refused," and sign the same officially. . . .  [S]uch procedure

---

[10]Because their interests are aligned, AKJ and RJT will be referenced jointly in this opinion as AKJ.

shall entitle the party requesting the same to have the action of the trial judge thereon reviewed . . . .

TEX. R. CIV. P. 276. The endorsement on the proposed charge is not the only means of obtaining a ruling under Rule 276. *Rosell v. Cent. W. Motor Stages*, *Inc.*, 89 S.W.3d 643, 657 (Tex. App.—Dallas 2002, pet. denied). For example, when offered instructions are not submitted to the jury, an objection to the trial court's refusal to submit those instructions coupled with a ruling on the objection is sufficient to preserve error. *See id*.

At the preliminary charge conference, conducted at the conclusion of the first day of a two-day trial,[11] both sides presented the trial court with their respective, proposed jury charges. The purpose of the conference was to "start looking at [the charge]," and not necessarily to take up any objections. The City contends, at the preliminary conference, that "the court unequivocally instructed counsel that the proposed instructions would not be included in the charge."[12] While the record fails to reflect an unequivocal ruling on the City's proposed instructions, the trial court indicated it was not inclined to offer the proposed instructions by stating, "nothing better than the old case law here citing 1958 cases in the instructions." The

---

[11]The jury was selected earlier in the month.

[12]Lufkin's proposed instructions, now the subject of this appeal, were:

PROPOSED INSTRUCTION NO. 2

A landowner is using a piece of property for a particular purpose if the property is known in the neighborhood as being used for that purpose. *F.T. Biddle v. Bd. of Adjustment, Vill. of Spring Valley*, 316 S.W.2d 437, 442 (Tex. Civ. App.—Houston 1958, writ ref'd n.r.e.). *City of Silsbee v. Herron*, 484 S.W.2d 154, 156-157 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.).

PROPOSED INSTRUCTION NO. 3

Preparation for use of the property before annexation is not enough to show a devotion of the property to that use. *City of Silsbee v. Herron*, 484 S.W.2d 154, 156-57 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.).

PROPOSED INSTRUCTION NO. 4

The fact that a particular use may have been contemplated by the owners is not sufficient to establish that a property was used for a particular purpose before the imposition of zoning restrictions. *Caruthers v. Bd. of Adjustment of the City of Bunker Hill Vill.*, 290 S.W.2d 340, 347 (Tex. Civ. App.—Galveston 1956, no writ).

PROPOSED INSTRUCTION NO. 5

In order to show that property is used for a particular purpose, it is not enough to show that the property was bought for that particular purpose. *Caruthers v. Bd. of Adjustment of the City of Bunker Hill Vill.*, 290 S.W.2d 340, 347 (Tex. Civ. App.—Galveston 1956, no writ).

court further indicated that it liked "Mr. Walker's [counsel for AKJ] preliminary instructions . . . ."

The formal charge conference was conducted the following day, at which time counsel for the City was asked to proceed with any objections. After objecting only to question number five, the City was asked if there were any other objections, to which counsel responded, "[N]o, Your Honor."

While the City does not contend it preserved error with respect to the trial court's refusal to submit its requested instructions at the formal charge conference, it argues error was preserved by way of a post-trial bill of exceptions. That bill specifically requested "that the record be made to reflect that Proposed Instructions Nos. 2, 3, 4, and 5 were requested in writing and tendered by Plaintiff City of Lufkin, and that such request was refused by the Court" by writing "refused" on the proposed instructions, memorializing the trial court's refusal to submit same on September 21.

At the hearing on AKJ's bill of exceptions, counsel for the City indicated that he failed to ask the court to write "refused" on the proposed instructions, reminding the court that "we handed them to you and you looked at them and said, 'I don't like them. This is '58 law, nothing like old law,' I believe is what you said." Counsel went on to explain that "I failed to . . . get you to write that ruling down, and all I'm asking in this instance is for you to reflect what your ruling was." The trial court indicated that "[m]y ruling was and is that I refused to give the instructions number 2, 3, 4 and 5."

14

Thereafter, the trial court filed a copy of the City's proposed jury charge and instructions with an attached order stating, "The above request was presented to the court after the close of the evidence and before submission of the court's charge to the jury in the presence of the court and opposing counsel and the court now hereby and in all things refused."

While the City did not formally object to the omission of its proposed instructions at the charge conference, it preserved error in this instance. The City's written instructions were presented to the trial court before the conclusion of the evidence, where the trial court indicated its preference for AKJ's proposed preliminary instructions. The trial court then clarified the record by indicating its earlier ruling at the preliminary charge conference was a refusal to submit the City's requested instructions to the jury. This clarification was sufficient to preserve error with respect to the court's refusal to submit the City's requested instructions. *See In re Stevenson*, 27 S.W.3d 195, 201 (Tex. App.—San Antonio 2000), *pet. denied*, 52 S.W.3d 735 (Tex. 2001) (rules regarding timing of objections and wording of requests should be applied with "common sense" so as not to promote "form over substance"); *see also Dallas Mkt. Ctr. Dev. Co. v. Liedecker*, 958 S.W.2d 382 (Tex. 1997) (per curiam) (error preserved when trial court failed to endorse "refused" on written request, when trial court indicated such failure was oversight), *overruled in part on other grounds by Torrington Co. v. Stutzman*, 46 S.W.3d 829, 840 n.9 (Tex. 2000).

While the complaint was preserved, we find no error. A trial court's decision to submit or refuse a particular instruction is reviewed for an abuse of discretion. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000); *Rigdon Marine Corp. v. Roberts*, 270 S.W.3d 220, 228 (Tex. App.—

Texarkana 2008, pet. denied). An abuse of discretion occurs where a trial court acts arbitrarily, unreasonably, without consideration of guiding principles, or clearly fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *Rigdon Marine Corp.*, 270 S.W.3d at 228. A trial court is afforded more discretion when submitting instructions than when submitting questions. *Wal-Mart Stores*, *Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex. App.—San Antonio 1998, pet. denied).

When a requested instruction is refused on a pending jury issue, we should consider "whether the request was reasonably necessary to enable the jury to render a proper verdict." *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). Moreover, the trial court may refuse a requested instruction even if it properly states the law, if it is not necessary to enable the jury to render a verdict. *Town of Flower Mound v. Teague*, 111 S.W.3d 742, 759 (Tex. App.—Fort Worth 2003, pet. denied); *White v. Liberty Eylau Indep. Sch. Dist.*, 920 S.W.2d 809, 812 (Tex. App.—Texarkana 1996, writ denied).

The omission of an instruction is reversible error only if the complaining party establishes that the omission probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a); *Wal-Mart Stores*, *Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003). Any error in the omission of an instruction is harmless "when the findings of the jury in answer to other issues are sufficient to support the judgment." *Shupe*, 192 S.W.3d at 579.

In order to prove its entitlement to conduct a commercial business on the annexed property, AKJ was required to prove its compliance with Section 43.002 of the Texas Local Government Code, which provides, in part,

16

(a) A municipality may not, after annexing an area, prohibit a person from:

      (1) continuing to use land in the area in the manner in which the land was being used on the date the annexation proceedings were instituted if the land use was legal at that time; or

      (2) beginning to use land in the area in the manner that was planned for the land before the 90th day before the effective date of the annexation if:

            (A) one or more licenses, certificates, permits, approvals, or other forms of authorization by a governmental entity were required by   law  for the planned land use; and

            (B) a completed application for the initial authorization was filed with the governmental entity before the date the annexation proceedings were instituted.

(b) For purposes of this section, a completed application is filed if the application includes all documents and other information designated as required by the governmental entity in a written notice to the applicant.

TEX. LOC. GOV'T CODE ANN. § 43.002.

AKJ submitted jury questions with respect to its compliance with both affirmative defenses set forth in subparts (a)(1) and (a)(2) of the statute.  It maintained that the land was being used for commercial purposes on the date annexation was instituted and further maintained it began to use the land in the manner that was planned for the land more than ninety days before the effective date of the annexation.

With respect to AKJ's contention that it was continuing to use the land for commercial purposes at the time of the annexation, the jury was asked a series of questions regarding AKJ's use of the land at the time of annexation.  Initially, the jury was asked if the defendants were "using the property for selling and purchasing heavy machinery and equipment on November 7,

17

2006?" The following three questions used the same format, only substituting "as a storage area for the loading and unloading of heavy machinery and equipment," "as a storage area for the repair of heavy machinery and equipment," and "as a business office." Each question asked the jury whether AKJ was using the property for a certain purpose.

To succeed on its alternative affirmative defense, AKJ needed a jury finding that it began to use the subject property in the manner that was planned for the land at least ninety days before the effective date of the annexation if "one or more licenses, certificates, permits, approvals, or other forms of authorization by a governmental entity were required by law for the planned land use," and "a completed application for the initial authorization was filed with the governmental entity before the date the annexation proceedings were instituted." TEX. LOC. GOV'T CODE ANN. § 43.002(a)(2). With regard to this affirmative defense, the jury was asked whether (1) AKJ began "to use the . . . Property in the manner that was planned for the land before the 90th day before November 7, 2006," and (2) whether AKJ completed "an application for a permit with a governmental entity before November 7, 2006." Both questions were answered in the affirmative.

The City's proposed jury instructions sought to clarify the definition of what constitutes the use of property for a particular purpose before the imposition of zoning restrictions. Specifically, the City sought to instruct the jury that mere preparation for use of property for a particular purpose, contemplated use of property for a particular purpose, or the purchase of property for a particular purpose, is not sufficient to show the property was actually used for that particular purpose before annexation. In support of its requested instructions, the City relied on

18

three cases that the Texas Supreme Court has declined to follow. *See Caruthers v. Bd. of Adjustment of City of Bunker Hill Vill.*, 290 S.W.2d 340, 347 (Tex. Civ. App.—Galveston 1956, no writ) (zoning ordinances providing for exemption of nonconforming use contemplate nonconforming use actually existing rather than contemplation of future use; mere fact that particular use may have been contemplated would not bring property within coverage of section in question), *declined to follow in Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424 (Tex. 2002); *F.T. Biddle v. Bd. of Adjustment*, *Vill. of Spring Valley*, 316 S.W.2d 437, 442 (Tex. Civ. App.—Houston 1958, writ ref'd n.r.e.) ("existing use" means usation of premises so that they may be known in neighborhood as being employed for given purpose), *declined to follow in Wende*, 92 S.W.3d 424; *City of Silsbee v. Herron*, 484 S.W.2d 154, 156 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.) (preparation for use of property before adoption of zoning ordinance not enough to show devotion of property to that use), *declined to follow in Wende*, 92 S.W.3d 424.[13]

The City maintains that its proposed instructions were proper statements of the law and were necessary to provide the jury with crucial guidance regarding what legally constitutes the use of property for a certain purpose. The City contends the failure to submit the proposed instructions caused the rendition of an erroneous judgment because a "significant portion of the evidence presented by Defendants was improperly considered as evidence of 'use.'" We disagree.

---

[13]In *Wende*, the high court indicated the "proper focus is on the City's own legislative enactments," rather than on the common law. Thus, the decision was based on an interpretation of the City of San Antonio's zoning ordinances, which expressly permitted the establishment of a nonconforming use by the leasing of land for that use. *Wende*, 92 S.W.3d at 431–32. Here, there is no contention the City of Lufkin enacted a similar zoning ordinance.

19

Because the City's proposed instructions were not necessary to enable the jury to render a verdict, the trial court did not err in refusing to submit them. *See Teague*, 111 S.W.3d at 759. The questions submitted to the jury relative to AKJ's first affirmative defense are phrased in terms of whether the defendants were "using the property" for various commercial purposes on the date of annexation. In each question, the commercial purpose listed was specific, including "selling and purchasing heavy machinery," "loading and unloading of heavy machinery and equipment," "as a storage area for the repair of heavy machinery and equipment," and "as a business office." The phrase "using the property" at the time of the annexation means just that— and could be interpreted only to mean that the property was being used for the commercial purpose at issue at the time of annexation. The questions, phrased in present-tense terms, do not suggest to the jury that actions taken, before "using the property" for the various commercial purposes listed, play any role in determining how the property was being used at the time of annexation.

Controlling issues of fact may be submitted to the jury by "questions, instructions, definitions, or through a combination thereof." *See* TEX. R. CIV. P. 278; *Rosell*, 89 S.W.3d at 653. Because the jury questions fairly placed controlling issues of fact before the jury, it was unnecessary to instruct the jury that contemplated or planned use of the property before annexation does not equate with actually using the property for commercial purposes before annexation.

Even assuming error in the refusal to so instruct the jury, such refusal did not cause the rendition of an improper verdict, because, as previously discussed, the evidence in support of the

20

jury's findings is supported by legally and factually sufficient evidence. Moreover, even assuming the requested instructions were submitted, and the jury then responded in the negative to each of the first four questions asked of it,[14] the effect would have merely been a failure to prevail on the first of two affirmative defenses submitted. Here, AKJ prevailed on the second affirmative defense submitted in question five,

> Did the Defendants begin to use the Defendants' Property in the manner that was planned for the land before the 90th day before November 7, 2006?

> Did Defendants complete an application for a permit with a governmental entity before November 7, 2006?[15]

The jury answered both of the foregoing questions in the affirmative.[16] Once this latter affirmative defense is proved, the landowner cannot be prohibited from continuing with the planned use of the property. *See* TEX. LOC. GOV'T CODE ANN. § 43.002(a)(2). Therefore, even if the requested instructions had been submitted, it would not have altered the verdict. Because

---

[14]The jury determined, at the time of the annexation, that AKJ was using the property for selling and purchasing heavy machinery and equipment, as a storage area for the loading and unloading of heavy machinery and equipment, and as a business office. The jury determined that the property was not being used as a storage area for the repair of heavy machinery and equipment.

[15]The jury was also instructed that "[a] completed application is filed if the application includes all documents and other information designated as required by the governmental entity in a written notice to the applicant." The jury was instructed that "August 9, 2006 is the 90th day before November 7, 2006."

[16]As a part of its waiver argument, AKJ contends Lufkin waived review of the entire judgment because it failed to challenge the jury's finding on the second affirmative defense. In support of this assertion, AKJ relies on TEX. R. APP. P. 38.1(e) (appellant's brief must state concisely all issues or points presented for review). AKJ cites no authority for the proposition that the failure to raise one issue on appeal precludes judicial review of those issues raised. We overrule this issue as it is inadequately briefed. *See* TEX. R. APP. P. 38.1(h) (brief must contain clear and concise argument with appropriate citations to authority and to record). In response to AKJ's argument that the City waived review of the judgment, the City claims, in its reply brief, that the legal question in connection with question five remained unanswered by the trial court—whether the permit AKJ obtained was "required by law for the planned use." The City then discussed the proper interpretation of Section 43.002—a subject beyond the scope of our review. *See* TEX. R. APP. P. 38.3; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 n.18 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

21

the finding of the jury in answer to question five is sufficient to support the judgment,[17] any error in the omission of the instructions was harmless. *See Shupe*, 192 S.W.3d at 579.

*(3)    Excluding the 2009–2010 Photographs Was Not Error*

The City also maintains that the trial court erred in excluding some photographs of the AKJ property taken in 2009 and 2010. We disagree.

The decision to admit or exclude evidence is within the sound discretion of the trial court, and is reviewed under an abuse of discretion standard. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *In re R.N.*, 356 S.W.3d 568, 570 (Tex. App.—Texarkana 2011, no pet.). We will not reverse the trial court's decision to admit or exclude a relevant photograph absent a showing of an abuse of discretion. *Castro v. Cammerino*, 186 S.W.3d 671, 680–81 (Tex. App.—Dallas 2006, pet. denied); *Huckaby v. A.G. Perry & Son, Inc.*, 20 S.W.3d 194, 209 (Tex. App.—Texarkana 2000, pet. denied). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles. *R.N.*, 356 S.W.3d at 570.

Janice Porter was employed by the City as a code enforcement officer. In that capacity, Porter investigated complaints made in 2009 and 2010 that Johnson was allegedly using the AKJ property in violation of the City's agricultural zoning ordinance. Porter testified, in an offer of proof, that she took five photographs depicting heavy equipment on AKJ property in 2009 and

---

[17]On appeal, the City neither challenges the submission of question five nor contends this affirmative defense cannot support the judgment. Finally, the City does not contend the evidence is insufficient to support the jury's response to question five. We, therefore, presume the jury's affirmative responses to both subparts of question five is sufficient to support the judgment. *See Rich v. Olah*, 274 S.W.3d 878 (Tex. App.—Dallas 2008, no pet.) (every reasonable presumption indulged in favor of findings and judgment of trial court).

2010. The photographs accurately depict Porter's observance of the property on the date she took the photographs.[18]

AKJ objected to Porter's testimony and the proffered photographs, stating,

Your Honor, Jan Porter only has information about zoning violations that were happening in 2009, nothing to do with the statute, nothing to do with the cause of action pled. It's highly irrelevant and prejudicial.

The City countered,

She's going to prove-up photographs that show what I explained before we started the trial, which is the difference between what was going on. . . . In 2009 and 2010, she will prove-up photographs to show what she said. That's not all she's going to testify about, but that is most of what she's going to testify about.

The court inquired,

We're not going to be talking about zoning violations?

The City responded that no such testimony would be offered. The City explained that the photographs depict AKJ's commercial business in 2009, which highlight the difference from 2006, in order to show AKJ did not have a commercial business operation in 2006. AKJ further objected because "they are trying to disprove satellite photos versus these photos. Judge again, highly prejudicial, highly irrelevant to this case."

After the offer of proof was tendered, the trial court ruled that it would not permit the admission of the proffered photographs due to the fact that the photographs were made in 2009.

On appeal, the City contends the excluded photographs were relevant to show no commercial operations were taking place on AKJ property at the time of annexation.[19] The City

---

[18]Porter testified that she took the photographs in anticipation of Lufkin's zoning violation complaint against AKJ.

23

wished to contrast these later photographs, clearly depicting a commercial operation, with photographs of the property in 2007.[20]

To be admissible, photographs must illustrate disputed fact issues or portray facts relevant to an issue. *Castro*, 186 S.W.3d at 681. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Generally, photographs relevant to any issue in the case are admissible. *Huckaby*, 20 S.W.3d at 209.

The proffered photographs are relevant, if at all, in that they show operations on the property in 2009–2010, assertedly contrasting that look with the different look of the property in 2006–2007. But their relevance to the issue of whether AKJ was conducting commercial operations on the property at the time of annexation in 2006 is marginal at best.

Aside from their arguable relevance, the photographs were objected to, under Rule 403,[21] as "highly prejudicial." Evidence should be excluded if the danger of unfair prejudice in the admission of the photographs substantially outweighs their relevance. *See* TEX. R. EVID. 403. Relevant evidence is not subject to exclusion merely because it would create prejudice. *Huckaby*, 20 S.W.3d at 209. Instead, it must appear that the evidence would be unfairly prejudicial to the objecting party. *See* TEX. R. EVID. 403. We believe, based on the context of

---

[19]The five photographs depict heavy equipment lined up behind the fence line on AKJ property with a "for sale by owner" sign posted in front of the fence.

[20]A photograph of the AKJ property taken in early 2007 depicts mounds of rubble on the property.

[21]Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

the photographs in question in light of the other evidence, the trial court was within its discretion in excluding the photographs.

Where excluded photographs showed both the injury allegedly caused by a defendant and another, more significant, injury not caused by that defendant, the exclusion of those photographs was within the trial court's discretion because of the danger of unfair prejudice. *See Bartosh v. Gulf Health Care Center-Galveston*, 178 S.W.3d 434, 443–44 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Because the photographs in question do not purport to show the condition of the property at the time of the annexation, but later, the trial court did not abuse its discretion in excluding them. *See, e.g.*, *Reichhold Chems., Inc. v. Puremco Mfg. Co.*, 854 S.W.2d 240 (Tex. App.—Waco 1993, writ denied), *overruled in part on other grounds by Lewis v. Blake*, 876 S.W.2d 314, 316 (Tex. 1994). No error is shown.

Even if it was error to exclude the photographs, any such error would have been harmless. "To reverse a judgment based upon error in the admission or exclusion of evidence, the appellant must show that the trial court committed error and that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment." *R.N.*, 356 S.W.3d at 570 (quoting *In re R.A.L.*, 291 S.W.3d 438, 446 (Tex. App.—Texarkana 2009, no pet.)). We have reviewed the entire record in this case and would conclude the exclusion of the photographic evidence, of marginal relevance at best, was not calculated to cause, nor did it probably cause, the rendition of an improper judgment.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:     June 5, 2012
Date Decided:       June 26, 2012